WATKINS v. WATKINS

[228 N.C. App. 548 (2013)]

ANNE KIMMEL WATKINS, Plaintiff
v.
RAYMOND D. WATKINS, Defendant

No. COA12-1135

Filed 6 August 2013

1. **Divorce—equitable distribution—IRAs—classification and valuation**

     The trial court erred in an equitable distribution and spousal support action in its classification and valuation of two investment retirement accounts, a pension rollover IRA, and a 401(k) Rollover IRA. The trial court was not required to apply the coverture ratio to determine the marital portion of an IRA except to the extent that the IRA was funded through a deferred compensation plan or was otherwise brought within the purview of N.C.G.S. § 50-20.1.

2. **Divorce—equitable distribution—valuation of investment accounts—competent supporting evidence**

     In an action involving equitable distribution and spousal support, there was competent evidence to support the trial court's valuation of plaintiff's investment accounts.

3. **Divorce—equitable distribution—valuation of IRA—transposition error—not prejudicial**

     The trial court did not err in an action for equitable distribution and spousal support in valuing plaintiff's 401(k) account and associated divisible property. The transposition error posited by defendant would have benefited defendant, and the credibility of testimony about a loss was exclusively within the province of the trial court.

4. **Divorce—equitable distribution—rental properties—separate property**

     The trial court did not err in an action for equitable distribution and spousal support by not characterizing two rental properties as marital. Plaintiff's testimony established that the properties were her separate properties, although defendant contended that he had contributed sweat equity and that one of the properties was acquired during the marriage.

5. **Appeal and Error—preservation of issues—no comprehensible argument**

An issue was deemed abandoned where the Court of Appeals could discern no comprehensible legal argument in defendant's brief concerning the issue.

6. **Divorce—equitable distribution—watch—gift from employer**

The trial court did not err in an action for equitable distribution and spousal support by classifying a Rolex watch as plaintiff's separate property. Plaintiff presented evidence that the watch was a gift from her employer while defendant presented no evidence that the watch was compensation.

Appeal by Defendant from judgments and orders entered 7 February 2012 by Judge Rebecca B. Knight in Buncombe County District Court. Heard in the Court of Appeals 13 March 2013.

*Gum, Hillier & McCroskey, P.A., by Patrick S. McCroskey, for Plaintiff.*

*Thomas D. Roberts PLLC, by Thomas D. Roberts, for Defendant.*

DILLON, Judge.

Raymond D. Watkins (Defendant) appeals from an equitable distribution judgment and order filed on 7 February 2012 and from a post-separation support, alimony, and attorneys' fees judgment and order also filed on 7 February 2012. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I. Factual & Procedural Background

Plaintiff and Defendant were married on 22 April 1995 and separated on or about 2 February 2010. On 10 May 2010, Plaintiff filed a complaint in Buncombe County District Court seeking, *inter alia*, an equitable distribution of the parties' assets. On 21 May 2010, Defendant filed an answer and counterclaims seeking post-separation support, alimony, and attorneys' fees. On 18 June 2010, Plaintiff filed a reply in which she denied that she was the supporting spouse.

These matters came on for hearing in Buncombe County District Court on 16 November 2011. Three days of hearings ensued, during

which the trial court received testimony and heard arguments from both parties. On 7 February 2012, the trial court entered two separate orders (1) addressing the issue of equitable distribution; and (2) addressing the issues of post-separation support, alimony, and attorneys' fees. Regarding equitable distribution, the court concluded that "an equal distribution of the marital estate is equitable and it would not be equitable to grant an unequal distribution in [] favor of the plaintiff or the defendant." The trial court also denied Defendant's claims for spousal support and attorneys' fees. Defendant filed his notice of appeal from the 7 February 2012 orders on 7 March 2012.

## II. Analysis

Defendant presents 20 issues on appeal, challenging the trial court's equitable distribution order and its order denying Defendant's counterclaims for spousal support and attorneys' fees.[1] We address these issues in turn.

### A. Equitable Distribution

Defendant's first 15 issues on appeal pertain to the trial court's equitable distribution order. Our review is limited to determining "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Stovall v. Stovall*, 205 N.C. App. 405, 407, 698 S.E.2d 680, 683 (2010). The trial court's findings of fact are binding on appeal "as long as competent evidence supports them, despite the existence of evidence to the contrary." *Id.*

"The initial obligation of the trial court in any equitable distribution action is to identify the marital property in accordance with G.S. 50–20 and the appropriate case law." *Cornelius v. Cornelius*, 87 N.C. App. 269, 271, 360 S.E.2d 703, 704 (1987). "The trial court must classify and identify property as marital or separate 'depending upon the proof presented to the trial court of the nature' of the assets." *Atkins v. Atkins*, 102 N.C. App. 199, 206, 401 S.E.2d 784, 787 (1991) (citation omitted). Further,

---

1. We note that Defendant also raises a 21st issue, challenging the trial court's order denying his motion for additional trial time. The trial court did not address this motion in its 7 February 2012 orders, but instead denied it by written order entered 18 May 2012. The notice of appeal included in the appellate record, however, references only the trial court's 7 February 2012 orders. Thus, we do not have jurisdiction over Defendant's challenge to the 18 May 2012 order, *see Brooks v. Gooden*, 69 N.C. App. 701, 707, 318 S.E.2d 348, 352 (1984) (providing that "[w]ithout proper notice of appeal, this Court acquires no jurisdiction"); N.C.R. App. P. 3(c) (2013), and we do not address this issue.

> [t]he burden of showing the property to be marital is on the party seeking to classify the asset as marital and the burden of showing the property to be separate is on the party seeking to classify the asset as separate. A party may satisfy her burden by a preponderance of the evidence.

*Id.* (citations omitted).

> If both parties meet their burdens, then under the statutory scheme of N.C.G.S. § 50-20(b)(1) and (b)(2), the property is excepted from the definition of marital property and is, therefore, separate property.

> If the party claiming the property to be marital does not meet his burden of showing that the property was acquired during the course of the marriage, the property does not immediately become, as a matter of law, separate property. The party claiming the property as his separate property must meet the burden of establishing by the preponderance of the evidence that the property was "acquired by [him] before marriage . . ." or acquired by him after separation with his own separate funds[.]

*Id.* at 206-07, 401 S.E.2d at 788 (citations omitted) (first alteration and ellipsis in original).

### 1. Defendant's Investment Retirement Accounts

**[1]** Defendant contends that the trial court erred in classifying and valuing two of his investment retirement accounts (IRAs). We agree and remand to the trial court to enter an order classifying and valuing Defendant's IRAs in a manner consistent with this opinion.

In 2000 – during the parties' marriage – Defendant opened the following two IRAs at issue at or about the time that he separated from his employment with BASF: (1) an IRA which was funded entirely with proceeds from his BASF defined pension plan (the Pension Rollover IRA); and (2) an IRA funded by rolling over a 401(k) account which he had contributed to while employed at BASF (the 401(k) Rollover IRA). In determining the marital and separate components of Defendant's IRAs, the trial court expressly relied upon the testimony of Plaintiff's expert, CPA Foster Shriner. Mr. Shriner concluded that the IRAs had a combined value of $273,312.00 as of the parties' date of separation, with the marital component valued at $188,344.00 and the separate component valued at

$88,968.00.[2] In determining these values, Mr. Shriner calculated the separate component by (1) using the combined value of Defendant's IRAs as of the date of marriage – which represented Defendant's separate property – and then (2) assuming that this separate property component increased in value each year during the marriage – until the date of separation – at the same rate as the S&P 500 index for each of those years.[3]

Defendant argues that the trial court erred by applying Mr. Shriner's method of valuation instead of the coverture fraction method, which, Defendant contends, was the required method of valuation under N.C. Gen. Stat. § 50-20.1 (2011) and this Court's precedent.

N.C. Gen. Stat. § 50-20.1 requires that the marital portion of a "pension, retirement, or other deferred compensation benefits" be calculated as follows:

> The award shall be determined using the proportion of time the marriage existed (up to the date of separation of the parties), simultaneously with the employment which earned the vested and nonvested pension, retirement, or deferred compensation benefit, to the total amount of time of employment.

*Id.* For instance, if a spouse has participated in a pension benefit plan for twenty years as of the date of separation and if the spouse had been married for fifteen of those years, then, applying the coverture fraction, 75 percent of the value of the pension would be considered marital property and the remaining 25 percent would be considered the working spouse's separate property.

In the case *sub judice*, Defendant posits that N.C. Gen. Stat. § 50-20.1 *required* the trial court to apply the coverture ratio because Defendant's

---

2. The trial court's findings accurately reflect Mr. Shriner's conclusion regarding the separate component; however, the order states that Mr. Shriner arrived at a marital component of $188,164.00, reflecting a discrepancy of $180.00.

3. We note that the trial court's finding relevant to its valuation of Defendant's IRAs cites Mr. Shriner's testimony that "the coverture ratio *is* the proper method to determine the value of these accounts." (Emphasis added). However, this appears to be a typographical error, as Mr. Shriner clearly testified that the coverture fraction was *not* the proper method of valuation in this case, stating that the coverture fraction methodology was "designed for defined-benefit plans" and is "fraught with mechanical error" when used to value accounts such as Defendant's IRAs. Furthermore, the remaining portion of the aforementioned finding cites with approval Mr. Shriner's method of valuation, which was not based upon the coverture fraction approach, but rather upon the parties' date of marriage and performance of the S&P 500 during the marriage.

IRAs are "defined contribution plans." Defendant relies upon *Robertson v. Robertson,* 167 N.C. App. 567, 605 S.E.2d 667 (2004), in support of this contention. As discussed in detail below, we believe that neither N.C. Gen. Stat. § 50-20.1 nor our holding in *Robertson requires* that a trial court apply the coverture ratio to determine the marital portion of an IRA, except to the extent that the IRA is funded through a deferred compensation plan or is otherwise brought within the purview of N.C. Gen. Stat. § 50-20.1.

N.C. Gen. Stat. § 50-20.1 was enacted in 1997 and, as previously stated, applies to "pension, retirement, or *other* deferred compensation benefits." N.C. Gen. Stat. §§ 50-20.1(a) and (b) (2011) (emphasis added). Prior to the enactment of N.C. Gen. Stat. § 50-20.1, defined contribution plans and defined benefit plans were largely thought of as plans which provided deferred benefits rather than as plans whose value was subject to immediate withdrawal or transfer. *See generally Seifert v. Seifert,* 82 N.C. App. 329, 346 S.E.2d 504 (1986). In *Seifert,* this Court described the differences between a defined contribution plan and a defined benefit plan as follows:

> Most pension and retirement plans can be described as falling within two categories: defined contribution plans and defined benefit plans. A defined contribution pension is essentially an annuity funded by periodic contributions. At retirement the funds purchase an annuity for the rest of the employee's life . . . . A defined contribution pension may be nominally funded by the employee, the employer or both.
>
> . . . .
>
> In a defined benefit plan the employee's pension is determined without reference to contributions and is based on factors such as years of service and compensation received.

*Id.* at 332-33, 346 S.E.2d at 505-06 (citations omitted). In other words, both defined contribution plans and defined benefit plans were thought of as vehicles for providing a "deferred compensation benefit," i.e., periodic payments to retired employees. Since the enactment of N.C. Gen. Stat. § 50-20.1, however, IRAs and 401(k) accounts have become more common methods for employees to fund retirement. Unlike the funds in a defined pension plan, the funds in an IRA do not represent a *deferred* compensation benefit because they belong to the employee and are accessible to the employee at any time.

A 401(k) account is more complex in that a *portion* of the account may represent a *deferred* compensation benefit provided by the employer. An employee's 401(k) account typically consists of both employee contributions and employer contributions. The employee contributions, which can be withdrawn by the employee at any time, clearly do not represent a "deferred compensation benefit"; thus, N.C. Gen. Stat. § 50-20.1 does not apply to these contributions. Similarly, 401(k) plans which provide for immediate vesting of employer contributions do not provide "deferred compensation benefits," as there is no deferral of benefits under such plans. We note that there are certain 401(k) plans pursuant to which employer contributions vest over a designated period of time and that employer contributions in these instances might be construed as "deferred compensation benefits"; however, this precise question is not before us in the instant case, as there was no evidence presented at trial indicating that Defendant's 401(k) account – with which he funded his 401(k) Rollover IRA – consisted of any employer contributions which did not immediately vest at the time of contribution.

In *Robertson*, the plan at issue was neither an IRA nor a 401(k) account; it was a defined contribution plan that provided company stock as a deferred compensation benefit, which was contributed each year by the employer to an account maintained for the benefit of the defendant-husband in the future. *Robertson*, 167 N.C. App. at 572, 605 S.E.2d at 670. The plaintiff-wife appealed the trial court's application of N.C. Gen. Stat. § 50-20.1 to her husband's plan, arguing that that provision was intended to apply only to defined pension plans. This Court held that "[n]othing in N.C. Gen. Stat. § 50-20.1 indicates that the coverture fraction is to be applied only to defined benefit plans." *Id.* We recognize that this language – upon which Defendant relies – could be construed to require application of N.C. Gen. Stat. § 50-20.1 to *all* defined contribution plans, irrespective of whether such plans involve deferred compensation benefits; indeed, this Court approved the utilization of the coverture fraction to determine the marital and separate components of a 401(k) plan in a recent unpublished opinion, *Curtis v. Curtis* __ N.C. App. __, 725 S.E.2d 472 (2012), a case in which neither party argued that the coverture fraction should not be utilized.[4] We believe from our careful review of *Robertson*, however, that our holding in that case was simply that N.C. Gen. Stat. § 50-20.1 applied to *deferred* compensation benefits, regardless of whether such benefits were derived from a "defined benefit

---

4. Unpublished opinions from this Court do "not constitute controlling legal authority." N.C. R. App. P. 30(e)(3) (2011).

plan" or a "defined contribution plan." *Robertson,* 167 N.C. App. at 572, 605 S.E.2d at 670.

The defined contribution plans at issue in *Robertson* and *Seifert* each provided for deferred compensation, whereas an IRA, in contrast, permits the employee immediate access to any funds that have been contributed. We believe that to extend application of N.C. Gen. Stat. § 50-20.1 to IRAs would lead to grossly inequitable results where, for example, significant amounts of property earned during the marriage could be treated as separate property, as the value of these accounts is largely, if not entirely, determined by contributions from the owner and not on the number of years of service to a particular company. For example, suppose that an individual opens an IRA and contributes a total of $6,000.00 to the account over a nine-year period. Assume that after these nine years the individual marries, and, because the spouse is a wage-earner, the individual is able to contribute $42,000.00 to the account during three years of marriage. If the parties separate after these three years and the trial court is required to apply the coverture ratio to the IRA, then only $12,000.00 – or 25 percent of the $48,000.00 balance – would be considered marital property – since the individual was married only 25 percent of the time he funded the account, even though $42,000.00 of the account was funded by the individual's earnings during the marriage.

In the case *sub judice*, Defendant's 401(k) Rollover IRA was funded entirely through Defendant's 401(k) plan with BASF. There is no evidence that any portion of this 401(k) plan included deferred compensation from an employer contribution. Thus, we do not believe that the trial court was required to apply N.C. Gen. Stat. § 50-20.1 to this particular account; and Defendant does not present any additional argument challenging the propriety of Mr. Shriner's methodology. Applying his methodology, Mr. Shriner determined that the separate portions of the IRAs grew in value from $35,000.00 as of the date of marriage[5] to $84,968.00 as of the date of separation. Since Defendant's handwritten notations indicate that $20,000.00 of this $35,000.00 represents the

---

5. Defendant contends that Mr. Shriner should have assigned a value of $45,000.00, instead of $35,000.00, as the combined value of Defendant's IRAs as of the date of marriage. However, Defendant did not provide any evidence in the form of account statements or other documents or testimony to demonstrate the value of these accounts as of the date of marriage. The only evidence presented consists of Defendant's handwritten statement that the pension was worth $15,000.00 and the 401(k) was worth $30,000.00 as of the date of marriage, for a combined value of $45,000.00. However, Defendant's handwritten notations also reflect that loans had been taken out against the 401(k) in the amount of $10,000.00, thus constituting competent evidence supporting Mr. Shriner's $35,000.00 valuation.

starting value of the 401(k) Rollover IRA, then, applying Mr. Shriner's methodology, the separate portion of the 401(k) Rollover IRA alone as of the date of separation is 20/35 of $84,968.00, or $48,553.00. The remaining $151,271.00 of the 401(k) Rollover IRA is marital.

The Defendant's Pension Rollover IRA, however, was funded entirely from Defendant's defined pension, which, we believe, *is* subject to N.C. Gen. Stat. § 50-20.1. Thus, we conclude that the trial court erred in relying on Mr. Shriner's methodology, which failed to apply the coverture fraction to derive the marital and separate components of this account. Defendant argues, and the record reflects, that he earned the pension over 272 months of employment at BASF, of which 65 months were during the marriage. Plaintiff does not dispute this on appeal. Accordingly, only 65/272 or 23.9 percent of the pension value used to fund the Pension Rollover IRA is properly classified as marital property. Applying the coverture ratio, the marital portion of the Pension Rollover IRA would be 23.9 percent of $73,488.00 (the value at separation), or $17,564.00. The separate portion would be $55,924.00.

In sum, the separate property portions of Defendant's IRAs would total $104,477.00 (the sum of $48,553.00 and $55,924.00), not $84,968.00, as found by the trial court.[6] The marital portion of the IRAs would total $168,835.00, not $188,164.00, as found by the trial court. Therefore, the trial court's error was prejudicial, and we remand to the trial court to modify its order in a manner consistent with the foregoing.

2. Plaintiff's Parsec Investment Accounts

[2] Defendant next argues that the trial court erred in valuing the separate, marital, and divisible components of Plaintiff's Parsec investment accounts. We disagree.

---

6. Defendant asserts that he made withdrawals from his IRAs for marital purposes – specifically, for the marital business – and requests that we instruct the trial court on remand "as to whether early withdrawals used for marital purposes from the defendant's retirement plans can change the marital and separate components of the two plans after the coverture fraction has been properly applied." At the hearing below, Defendant presented evidence that he claims reflects loans made to the marital business through early withdrawals from his IRAs. However, the fact that the trial court did not make a specific finding regarding this evidence does not indicate that the trial court failed to consider it. The trial court was required only to make "sufficient specific findings to enable [this Court] to review the decision and test the correctness of the judgment," and was not otherwise required to provide "a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts[.]" *Quick v. Quick*, 305 N.C. 446, 451-52, 290 S.E.2d 653, 658 (1982). We believe that the trial court complied with this standard, and, accordingly, we decline to provide the requested instruction on remand.

The trial court made the following findings relating to Plaintiff's Parsec accounts:

> Plaintiff's Parsec account[s]: The plaintiff obtained Parsec investment accounts prior to the date of the marriage and contributed to the account after the date of marriage. The classification of the Parsec accounts is mixed with both a marital and a separate component. Based upon credible evidence presented at trial, that the marital component of this account was $21,000 as of the date of separation, however, due to passive loss in the markets, the fair market value of this account has been reduced to $19,311. The $1,689 loss is divisible property, having been derived from the passive market activity.

Our review of the record reveals competent evidence in support of the trial court's valuation of Plaintiff's three Parsec accounts. Mr. Shriner testified concerning the marital and separate components of the accounts based upon his review of account statements, which were submitted to the trial court as exhibits and have been included in the appellate record. Defendant argues that Mr. Shriner used 30 November 2010 as an "arbitrary" date of separation for purposes of determining the marital and separate components of the Parsec accounts. A careful reading of Mr. Shriner's testimony, however, reveals that Shriner did not use 30 November 2010 as the parties' date of separation, but rather as the date that he last reviewed the value of the Parsec accounts. For instance, Mr. Shriner testified that Plaintiff's separate component of the accounts as of 30 November 2010, *including the earnings accrued post-separation*, was approximately $56,168.93, whereas the value as of the date of separation was approximately $59,984.00. Defendant also argues that there was no evidence of a divisible loss of $1,689.00 associated with the Parsec accounts. However, Plaintiff's testimony that the value of these accounts declined over the course of the two years prior to trial served as competent evidence in support of this finding, and the trial court properly characterized this loss as divisible under N.C. Gen. Stat. § 50-20(b)(4)(a) (2011) (providing that divisible property includes all appreciation and diminution in value of marital property and divisible property of the parties occurring after the date of separation and prior to the date of distribution). Finally, we note Defendant's contention that "[t]he court also erred by calculating a divisible loss based upon asset values more than one year prior to the date of judgment." Defendant fails to provide any argument or authority in support of this assertion, and we accordingly deem it abandoned. *See* N.C.R. App. P. 28(b)(6) (2013).

### 3. Plaintiff's 401(k) Account

**[3]** Defendant next argues that the trial court erred in valuing Plaintiff's 401(k) account and the divisible property associated with this account. We disagree.

The trial court valued Plaintiff's 401(k) account at $221,519.00 as of the parties' date of separation. Defendant cites financial statements indicating that the account had a value of $212,518.64 on the date of separation and posits that the trial court may have transposed the first two digits of that figure in arriving at its valuation. Any such error, however, would have *increased* the marital component of the account, thereby benefiting Defendant; thus, Defendant cannot show prejudice, and this contention fails. *See In re A.D.L.*, 169 N.C. App. 701, 706, 612 S.E.2d 639, 643 (2005) (providing that "[i]n order to obtain relief from an order due to a clerical or technical violation, the complaining party must demonstrate how she was prejudiced or harmed by the violation").

The trial court also found that a $17,380.00 loss associated with Plaintiff's 401(k) account had occurred and classified the loss as divisible property. Defendant argues that Plaintiff's testimony as to this loss "was not reliable enough to be used as credible evidence." Questions of witness credibility, however, are exclusively within the province the trial court. *Cornelius v. Helms*, 120 N.C. App. 172, 175, 461 S.E.2d 338, 340 (1995) (explaining that "[a]s fact finder, the trial court is the judge of the credibility of the witnesses who testify" and that "[t]he trial court determines what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom"). This contention is accordingly overruled.

### 4. Real Property

**[4]** Defendant contends that the trial court "erred in failing to characterize the Aspen Way and Greenwood Forest Road properties as marital or having substantial marital components." We disagree.

### a. The Aspen Way Property

The trial court made the following pertinent findings with respect to the real property situated on Aspen Way in Asheville:

> The plaintiff owned this property prior to the date of marriage to the defendant. It was re-financed during the marriage but it was maintained at all times as the plaintiff's separate property. The title to the property was never transferred from the plaintiff to the defendant or to the

> plaintiff and defendant as tenants by the entirety. The property was a rental property during the marriage and the rental income generated from this property paid the mortgage, taxes, insurance and repairs on the property. The plaintiff managed the rental property during the marriage. That property and the income from the property was the plaintiff's separate property.

Defendant admits that Plaintiff acquired Aspen Way prior to their marriage, but argues that the trial court should have classified Aspen Way as "entirely marital" because Plaintiff "failed to produce any evidence as to the amount or source of funds she claims to have been her separate property[.]" However, Plaintiff's testimony, as reflected in the trial court's findings, *supra*, established that Aspen Way was Plaintiff's separate property and maintained as such throughout the marriage. Moreover, Defendant's contention that mortgage payments made during the marriage gave rise to a "substantial marital interest in the property" fails in light of the fact that Plaintiff made those payments using the rental income generated by Aspen Way, which itself was Plaintiff's separate property. *See* N.C. Gen. Stat. § 50-20(b)(2) (providing that "income derived from separate property shall be considered separate property").

Finally, we are not persuaded by Defendant's contention that he contributed to an "active" increase in the value of Aspen Way through performance of work on the property such as painting the walls and installing a sheetrock ceiling. Defendant had the burden of proving beyond a preponderance of the evidence that the increases in the value of the property were marital property. *Ciobanu v. Ciobanu*, 104 N.C. App. 461, 465-66, 409 S.E.2d 749, 752 (1991). However, per the trial court's findings – which are supported by competent evidence – any increase in the value of the Aspen Way property was derived through Plaintiff's maintenance and rental of the property to third parties. Moreover, Defendant's reference to his trial testimony that he helped manage Aspen Way does not further his position, as the trial court was the sole judge of the credibility and weight afforded to the testimony presented at trial, *Cornelius*, 120 N.C. App. at 175, 461 S.E.2d at 340, and this Court is entitled to determine only whether there is competent evidence *in support of* the trial court's findings, *In re Montgomery*, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984).

b. The Greenwood Forest Drive Property

The trial court made the following pertinent findings with respect to the real property situated on Greenwood Forest Drive:

On December 4, 2002, the plaintiff borrowed approximately $78,550 from the equity in her separate residence located [on] Aspen Way. On the same day, December 4, 2002, the plaintiff purchased [Greenwood]. Title to [Greenwood] was placed in the plaintiff's name alone and has remained in her sole name since that date. The plaintiff used her separate funds to purchase this asset, put the title in her separate name, and advised the defendant that this property would remain her separate property. This property was rented throughout the remainder of the marriage and the rental income was used to make the payments, including taxes, insurance and maintenance on this property. The plaintiff managed this property during the marriage. The Defendant contends that there is sweat equity in the home, but there is insufficient evidence to determine the fair market value, if any, of a marital interest in the property. The fair market value of this property was $159,300 on the date of separation and there was a mortgage debt of $89,492 so the net fair market value on the date of separation was $69,808.

These findings reflect Plaintiff's testimony establishing that Plaintiff acquired and has maintained Greenwood as her separate property. Plaintiff used her separate property – her equitable interest in Aspen Way – to borrow funds to acquire Greenwood, and she has maintained it much as she has maintained Aspen Way. While Defendant correctly avers that he carried his burden of proving that Plaintiff acquired Greenwood during the marriage – and that Greenwood was therefore presumed to be marital property – Defendant's insistence that Plaintiff failed to then carry her ensuing burden of showing that the property was in fact her separate property is undermined by Plaintiff's testimony and by the trial court's findings, supra. Thus, we conclude that the trial court's findings are supported by competent evidence, so Defendant's contention is overruled.

### 5. Valuation of Personal Property

[5] Defendant next argues that the trial court erred in valuing various personal properties. We discern no comprehensible legal argument in Defendant's brief concerning this issue, and we accordingly deem the issue abandoned. *See* N.C.R. App. P. 28(a) (2013).

### 6. The Rolex Watch

[6] Defendant next argues that the trial court erred in classifying as Plaintiff's separate property a Rolex watch given to Plaintiff by her

employer. Defendant argues that this watch constituted compensation, not a gift, and thus should have been characterized by the trial court as marital property. However, Plaintiff presented evidence at trial that her employer was generous and often gave gifts to employees, and Defendant presented no evidence demonstrating that the watch was intended as a form of compensation, i.e., that it was not given out of "detached and disinterested generosity" or "out of affection, respect, admiration, charity or like impulses." *See Comm'r v. Duberstein,* 363 U.S. 278, 285 (1960) (citations and quotation marks omitted). Accordingly, we discern no error in the trial court's classification of the Rolex watch as Plaintiff's separate property.[7]

### 7. Remaining Equitable Distribution Issues

We have carefully reviewed Defendant's remaining challenges to the trial court's equitable distribution order and conclude that in each instance competent evidence supports the court's findings, which, in turn, support the court's conclusions of law. These contentions are accordingly overruled.

### B. Spousal Support & Attorneys' Fees

Defendant's issues 16 through 20 on appeal consist of challenges to the trial court's order denying his claims for spousal support and attorneys' fees. We have carefully reviewed the record and conclude that, with respect to these challenges, the trial court's findings are supported by competent evidence – which, in some instances, includes Defendant's own testimony – and that these findings support the trial court's conclusions of law. Defendant's arguments concerning these issues are overruled.

### III. Conclusion

In light of the foregoing, we reverse the portion of the trial court's equitable distribution order relating to the classification and valuation of Defendant's IRAs and remand for a modification of the order consistent with this opinion. We affirm the trial court's judgments and orders in all other respects.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judges CALABRIA and ERVIN concur.

---

7. Defendant also argues that the trial court erred in assigning a value of $500.00 to the watch. While we believe that this argument is moot in light of our determination that the watch was properly classified as separate property, we note that the record reveals competent evidence in support of this valuation.