IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-483

Filed 18 March 2026

Moore County, No. 22CVD000450-620

CHRISTOPHER BAILEY, Plaintiff,

v.

HOLLY BAILEY, Defendant.

Appeal by defendant from order entered 8 November 2024 by Judge Warren McSweeney in Moore County District Court. Heard in the Court of Appeals 10 February 2026.

*Wilson, Reives & Doran, PLLC, by Nathalie M. Doran, for plaintiff-appellant.*

*The Baker Law Firm, by Christina E. Baker, for defendant-appellee.*

ARROWOOD, Judge.

Christopher Bailey ("plaintiff") appeals from an equitable distribution order awarding real property to his ex-wife, Holly Bailey ("defendant"). For the following reasons, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

I.     Background

Plaintiff and defendant married on 18 April 2015. At the time, plaintiff owned a house in Aberdeen, North Carolina ("Aberdeen property") that he purchased in 2009 with his former wife. Plaintiff's former wife had deeded the Aberdeen property to

plaintiff on 13 January 2015 and plaintiff refinanced the property that same day. Plaintiff refinanced the property again on 12 November 2020. At no point did plaintiff convey an interest in the Aberdeen property to defendant. The Aberdeen property was used as a rental property from 2015 until early 2020 when the parties moved in and began using it as their primary residence.

The parties separated in the fall of 2021. Plaintiff contends that the precise date of separation was 27 October 2021 while defendant maintains that their date of separation was 28 November 2021. On 21 April 2022, plaintiff filed a Complaint for Child Custody and Equitable Distribution seeking in part an equitable distribution of the parties' marital and divisible property with an unequal distribution in his favor. Defendant filed her answer and counterclaims on 28 July 2022 seeking in part an equitable distribution of the parties' marital property with an unequal distribution in her favor. Defendant also requested that she be granted a writ of possession for the Aberdeen property, which plaintiff opposed in his reply on 26 August 2022.

On 12 December 2022, the trial court entered an order granting temporary use and possession of the Aberdeen property to defendant and ordering plaintiff to pay the mortgage, taxes, and insurance on the Aberdeen property as temporary child support.[1] On 25 May 2023, the trial court entered a pretrial order that contained

---

[1] The memorandum order contained a clerical error ordering defendant, who resided with the children, to pay the mortgage, taxes, and insurance on the Aberdeen property as temporary child support. In actuality, plaintiff paid the mortgage, taxes, and insurance on the Aberdeen property as temporary child support.

schedules and contentions concerning the parties' property. The trial court held hearings on 17 October 2023 and 16 April 2024.

On the day of the second hearing, the trial court entered stipulations signed by the parties. The parties stipulated that the Aberdeen property was valued at $177,000.00 on the date of marriage, $248,000.00 on the date of separation, and $280,500.00 at the time of signing. They also stipulated that the mortgage on the Aberdeen property was $201,000.00 on the date of marriage, $174,183.36 on the date of separation, and $162,429.95 at the time of signing. They made no stipulation as to the classification of the Aberdeen property. Finally, the parties stipulated that the business plaintiff started in 2019, Strider Chainbridge, was marital property but did not stipulate the value of the business.

On 8 November 2024, the trial court entered an equitable distribution order granting an unequal distribution in defendant's favor. The order did not classify the Aberdeen property itself but found that the property had negative equity on the date of marriage and that there were no active contributions of separate property in the home. Instead, the court found that all of the active contributions, namely the mortgage reduction, and the passive appreciation of the Aberdeen property was marital property. The trial court distributed the Aberdeen property and all equity therein to defendant. As to Strider Chainbridge, the trial court valued it at $32,307.00 on the date of separation and distributed it solely to plaintiff. After distributing the rest of the property, the trial court ordered that defendant pay

plaintiff a $20,000.00 distributive award. Plaintiff filed a Notice of Appeal to this Court on 19 November 2024.

## II.     Discussion

Plaintiff argues that the trial court erred by 1) distributing the Aberdeen property to defendant, 2) valuing Strider Chainbridge at $32,307.00, 3) ordering an unequal distribution without supporting findings of fact, 4) failing to determine the net value of the marital estate, 5) ordering a distributive award instead of an in-kind distribution, 6) failing to identify how the distributive award would be paid, and 7) distributing the property at issue considering the errors in the order. We address plaintiff's arguments below.

### A.     Standard of Review

"When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Miller v. Miller*, 253 N.C. App. 85, 100 (2017) (citation and quotation marks omitted). "Our review of an equitable distribution order 'is limited to a determination of whether there was a clear abuse of discretion.'" *Kaylor v. Kaylor*, 296 N.C. App. 80, 82 (2024) (quoting *White v. White*, 312 N.C. 770, 777 (1985)). "'A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason.'" *Id.* (quoting *Petty v. Petty*, 199 N.C. App. 192, 197 (2009)).

### B.     Aberdeen Property

Plaintiff contends that the trial court erred in distributing the Aberdeen property to defendant. Specifically, plaintiff argues that the trial court erred by failing to classify the Aberdeen property as his separate property, failing to distinguish the classification and the appreciation of the Aberdeen property, finding that the appreciation of the Aberdeen property was active, and failing to determine a date of separation to value the Aberdeen property. For the following reasons, we agree that the trial court erred in distributing the Aberdeen property to defendant. Accordingly, we reverse the trial court's equitable distribution order and remand for further proceedings.

### 1. Classification of the Property and Equity

In an action for equitable distribution, the trial court is required to "conduct a three-step process: (1) classify property as being marital, divisible, or separate property; (2) calculate the net value of the marital and divisible property; and (3) distribute equitably the marital and divisible property." *Smith v. Smith*, 387 N.C. 255, 258 (2025) (citation and quotation marks omitted). "Separate property may not be distributed." *Crowell v. Crowell*, 372 N.C. 362, 368 (2019) (citation omitted). Under North Carolina law, marital property is "[a]ll real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property or divisible property[.]" N.C.G.S. § 50-20(b)(1b) (2025). Divisible property generally refers to certain property received after the date

of separation but prior to distribution. *Id.* § 50-20(b)(1a). Separate property is that "acquired by a spouse before marriage or acquired by a spouse by devise, descent, or gift during the course of the marriage." *Id.* § 50-20(b)(2). The passive appreciation of separate property and the income derived from separate property is considered separate property. *Id.*; *see also Roberts v. Kyle*, 291 N.C. App. 69, 76–77 (2023).

This Court has described the burden of parties in an equitable distribution case as follows:

> The party claiming the property to be marital must meet her burden by showing by the preponderance of the evidence that the property: (1) was "acquired by either spouse or both spouses"; and (2) was acquired "during the course of the marriage"; and (3) was acquired "before the date of the separation of the parties"; and (4) is "presently owned." N.C.G.S. § 50–20(b)(1). If this burden is met and a party claims the property to be separate, that party has the burden of showing the property is separate. This burden is met by showing by the preponderance of the evidence that the property was: (1) "acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage" (third-party gift provision); or (2) "acquired by gift from the other spouse during the course of marriage" and the intent that it be separate property is "stated in the conveyance" (inter-spousal gift provision); or (3) was "acquired in exchange for separate property" and no contrary intention that it be marital property is "stated in the conveyance" (exchange provision). N.C.G.S. § 50–20(b)(2). If both parties meet their burdens, then under the statutory scheme of N.C.G.S. § 50–20(b)(1) and (b)(2), the property is excepted from the definition of marital property and is, therefore, separate property.

*Atkins v. Atkins*, 102 N.C. App. 199, 206 (1991).

Additionally, property can have dual character and when this is the case, "the component interests of the marital and separate estates must be identified[.]" *Crago v. Crago*, 268 N.C. App. 154, 159 (2019) (quoting *McIver v. McIver*, 92 N.C. App. 116, 124 (1988)). "North Carolina recognizes the 'source of funds' rule, under which assets purchased with, or comprised of, part marital and part separate funds are considered 'mixed property' for equitable distribution purposes." *Carpenter v. Carpenter*, 245 N.C. App. 1, 11 (2016) (citation omitted). "In instances where a trial court is charged with distributing mixed property, 'each [party] is entitled to an interest in the property in the ratio [his] contribution bears to the total investment in the property.' " *Id.* at 11–12 (quoting *Wade v. Wade*, 72 N.C. App. 372, 382 (1985)).

This Court has recognized that real property can be separate property while equity in that real property is marital. *See Turner v. Turner*, 64 N.C App. 342, 346 (1983); *Watson v. Watson*, 261 N.C. App. 94, 98–99 (2018). In *Turner*, the trial court found that the plaintiff purchased a house before the marriage and that during the marriage, the defendant helped pay for the house and make improvements to the house. 64 N.C. App. at 345. The trial court found that the defendant was entitled to one-half of the equity in the house and included the house in the distribution. We held that the trial court erred, explaining:

> If the house was purchased by plaintiff before the marriage, as the finding states, then it was error to subject the house, *as such*, to equitable distribution, since under G.S. 50–20(b)(2), property acquired by a spouse before marriage is "separate," rather than "marital," property. If,

> however, an equity in this property developed during the marriage because of improvements or payments contributed to by defendant, that equity (as distinguished from a mere increase in value of separate property, excluded by the statute) could be marital property, in our opinion, upon appropriate, supportable findings being made. And if not marital property, such equity, if it developed, would be a factor requiring consideration by the court, along with the other factors specified in the statute, before determining how much of the marital property each party is entitled to receive.

*Id.* at 346.

This Court reaffirmed that North Carolina law recognizes the dual nature of real property in *Wade.* There, the plaintiff purchased land prior to the marriage and then he and the defendant built a house on the land. *Wade,* 72 N.C. App. at 378. The plaintiff was awarded both the land and the house in the trial court's equitable distribution order. The defendant appealed and asked this Court to "adopt the theory of 'transmutation through commingling'" under which "affirmative acts of augmenting separate property by commingling it with marital resources is viewed as indicative of an intent to transmute, or transform, the separate property to marital property." *Id.* at 381. This court refused to adopt the theory of transmutation because N.C.G.S. § 50-20 demonstrates "a clear legislative intent that separate property brought into the marriage or acquired by a spouse during the marriage be returned

to that spouse, if possible, upon dissolution of the marriage."[2] *Id.* Accordingly, this Court recognized that the land and the house constituted one asset that was partially separate and partially marital. *Id.* at 382.

Here, the trial court erred by distributing the Aberdeen property to defendant and classifying the passive appreciation of the property as marital. The Aberdeen property was purchased by plaintiff prior to the marriage, making it his separate property. Thus, the Aberdeen property is not subject to distribution under N.C.G.S. § 50-20(b)(2) and any passive appreciation of the property is separate property. Under *Turner*, any increase in equity that was developed because of mortgage payments made with marital funds may be marital property, but that does not convert the Aberdeen property itself into marital property.

Defendant argues that the distribution of the Aberdeen property was appropriate because the property had negative equity on the date of marriage. To support her argument, she cites *Brackney v. Brackney*, 199 N.C. App. 375, 383–85 (2009), in which this Court affirmed the classification of a house that a husband closed on post-separation as marital where the active contributions to the equity came from marital funds. However, in *Brackney*, the home itself was purchased using entirely marital funds. *Id.* at 383. Thus, this Court's distinction in *Turner* between

---

[2] This Court has since recognized transmutation in the limited circumstance where separate property and marital property are commingled, and the separate property cannot be traced into its form at the date of separation. *Fountain v. Fountain*, 148 N.C. App. 329, 333 (2002).

the classification of real property and the equity within remains unchanged by *Brackney*. We hold that the reasoning in *Turner* applies the same here where the separate property had negative equity on the date of marriage. To hold otherwise would be to allow marital contributions to the equity to transform the property from separate property to marital property, contrary to our caselaw and the legislature's intent to keep separate property separate. Accordingly, we reverse the trial court's equitable distribution order classifying the passive appreciation of the Aberdeen property as separate and distributing the property to defendant and remand to the trial court to reconsider the classification of the Aberdeen property, including equity and appreciation, in a manner consistent with this opinion.

2.     Classification of the Active Appreciation of the Aberdeen Property

The trial court's error in failing to classify the Aberdeen property as plaintiff's separate property may have also affected its finding that the active contributions to the property were completely marital. Thus, on remand the trial court should reconsider the classification of any active appreciation or contributions to the Aberdeen property. However, to provide additional guidance to the trial court, we address plaintiff's argument that the appreciation was not active and should be considered separate because "a lion's share of the mortgage payments made during the marriage were in fact satisfied by the rental income generated by the property itself."

"With respect to active appreciation of separate property, any increase in value

- 10 -

between the date of acquisition and the date of separation is presumptively marital property unless it is shown to be the result of passive appreciation." *Roberts*, 291 N.C. App. at 77 (citation omitted). However, an increase in the value of separate property can remain separate where the increase is attributable to only the owning spouse. For example, in *Watkins v. Watkins*, 228 N.C. App. 548, 558–59 (2013), the plaintiff acquired real property before the marriage and re-financed it during the marriage but never transferred a property interest to the defendant. *Id.* The real property was awarded to the plaintiff as separate property in an equitable distribution order and the defendant appealed, arguing that the real property was entirely marital, in part because mortgage payments were made on the real property during the marriage. *Id.* at 559. This Court rejected the defendant's argument and affirmed the trial court's order because the plaintiff had paid the mortgage using rental income generated by the real property, which was itself separate property. *Id.* (citing § 50-20(b)(2)).

Here, the trial court found that both the value of the property and the equity increased during the marriage, raising the presumption that the increase in value was marital. Plaintiff could rebut this presumption by demonstrating that the appreciation was passive or that the active contributions to the mortgage came from plaintiff's separate property. Plaintiff did testify that the mortgage payments were made using the rental income from the Aberdeen property, which under *Watkins* would make the increase in equity separate property. However, the trial court as the

sole judge of credibility is free to weigh the testimony and determine whether and what portions of the mortgage contributions were made from plaintiff's separate property. *See Watkins*, 228 N.C. App. at 559. On remand, the trial court shall consider all the evidence before it and make clear findings as to what portions of the equity and appreciation of the Aberdeen property are separate or marital.

### 3. Valuation

Plaintiff argues that the trial court erred by failing to determine the date of separation in order to properly value the Aberdeen property. We hold that the trial court did not err in its valuation of the Aberdeen property because plaintiff and defendant stipulated the value of the property on the date of separation.

Parties may stipulate the value of property in equitable distributions. *See Wirth v. Wirth*, 193 N.C. App. 657, 662–63 (2008). " 'A stipulation is an agreement between the parties establishing a particular fact in controversy.' " *Smith*, 387 N.C. at 259 (quoting *Smith v. Beasley*, 298 N.C. 798, 800 (1979)). " 'The effect of a stipulation is to eliminate the necessity of submitting that issue of fact to the jury.' " *Id.* (quoting *Beasley*, 298 N.C. at 800). "While a stipulation remains in place, the parties are 'bound by it and . . . may not thereafter take an inconsistent position[.]' " *Id.* (ellipsis in original) (quoting *Rural Plumbing & Heating, Inc. v. H.C. Jones Constr. Co.*, 268 N.C. 23, 31 (1966)). A stipulation remains in place until it is set aside by the court. *See id.*

Here, plaintiff and defendant stipulated that the value of the Aberdeen property on the date of separation was $248,000.00 and the balance of the mortgage on the date of separation was $174,183.36. The effect of that stipulation was to establish the value of the Aberdeen property on the date of separation, regardless of what the date of separation was. The trial court properly accepted the stipulations and they remained in place when the equitable distribution order was filed. Plaintiff may not now take a position inconsistent with the stipulated value of the Aberdeen property on the date of separation.

Plaintiff also argues in the alternative that even if this Court determined that the Aberdeen property was marital property, the trial court erred by failing to properly value it on the date of distribution. Plaintiff's argument arises from the requirement under N.C.G.S. § 50-20(a), (1a) that the court identify and provide for the equitable distribution of divisible property, which includes the appreciation in value of marital property occurring after the date of separation and prior to the date of distribution. Because we conclude that the Aberdeen property was separate property, we do not reach this issue.

## C.   Strider Chainbridge

Plaintiff argues that the trial court committed reversible error in its valuation of Strider Chainbridge because the trial court failed to identify the valuation method it used and the evidence presented does not demonstrate that the trial court relied on

a sound method of valuation.  We conclude that the trial court erred in its valuation of Strider Chainbridge.

The trial court explained its distribution and valuation of Strider Chainbridge as follows:

> Strider Chainbridge is marital property, and it had a date of separation value of $32,307.00. This is from defendant's exhibit 27 and utilizing the amounts listed in the tax returns for income profit over a two year span prior to date of separation and also considering the bank statements found in defendant's exhibit 34.

Defendant's exhibit 27 showed Strider Chainbridge's net income in 2019 and 2020 which totaled $5,653.00 and $58,962.00, respectively.  The bank statements in exhibit 34 showed Strider Chainbridge's monthly statements from June 2021 through July 2022.  The statements generally showed a decline in the business's bank balance and deposits.

This Court provided guidance on the valuation of businesses in *Poore v. Poore*, 75 N.C. App. 414, 419 (1985).  There, we held that "a court should consider the following components of the practice:  (a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities."  *Id.* Additionally, "a court should make specific findings regarding the value of a spouse's professional practice and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, preferably noting the

valuation method or methods on which it relied." *Id.* at 422. "On appeal, if it appears that the trial court reasonabl[y] approximated the net value of the practice and its goodwill, if any, based on competent evidence and on a sound valuation method or methods, the valuation will not be disturbed." *Id.*

The Supreme Court of North Carolina applied the *Poore* framework in *Patton v. Patton*, 318 N.C. 404, 407 (1986). There, the trial court had valued a husband's share of a closely-held corporation at "at least $85,000." *Id.* at 405–406. The trial court's findings of fact listed the evidence considered by the trial court including the husband's own estimate, the book value of the business, the capitalization of earnings of the company and the earning capacity of the company over a four-to-five year period. *Id.* Our Supreme Court held that the trial court's finding of fact "appear[ed] to be merely an enumeration of the factors considered by the trial court in determining the value of defendant's interest in [the corporation], lacking any indication of what value, if any, the trial court may have attributed to each of the enumerated factors." *Id.* at 407. The Court determined that the list of evidence, combined with the lack of an exact valuation, was too vague and conclusory to permit appellate review. *Id.*

This Court also applied the *Poore* framework in *Stowe v. Stowe*, 272 N.C. App, 423, 434–35 (2020). There, the trial court valued an insurance business based on expert testimony which used a multiplier of gross sales. *Id.* at 430–32. The trial court also found that the business "had certain goodwill" but did not specifically

explain its valuation of the goodwill. *Id.* at 435. This Court reversed the trial court's valuation, holding that the trial court failed to use the *Poore* framework in determining the value of the business and its goodwill. *Id.* at 435, 445.

Here, the trial court's findings concerning the valuation of Strider Chainbridge do not demonstrate that the trial court reasonably approximated the value of Strider Chainbridge on the date of separation. Just as in *Patton*, the trial court's finding about Strider Chainbridge is a mere enumeration of the factors considered by the trial court with no indication of how it valued each factor or the method it used. The trial court's bare findings make review difficult. Our review is further impeded by the fact that the trial court never determined the parties' precise date of separation. Additionally, the factors that are listed by the trial court do not include any of the *Poore* considerations other than cash. It does not consider other assets, work in progress, or, most notably, goodwill. Without these considerations, we cannot affirm that the trial court used a sound valuation method.

Moreover, from what can be discerned from the trial court's findings, the valuation methodology used by the trial court does not appear to reasonably approximate the value of Strider Chainbridge. The trial court's valuation of Strider Chainbridge is equal to the average of the company's net income in 2019 and 2020. Given the large difference in the net income those two years, likely because the company was only founded in late 2019, an average of those values is not a reasonably accurate approximation of the business' actual value. Additionally, the bank

statements showed a significant decrease in cash assets and deposits leading up to the parties' separation which further demonstrates that past net income is not likely to be an accurate approximation of the business' value. Because the trial court failed to apply the factors in *Poore* to value Strider Chainbridge or its goodwill and did not otherwise demonstrate that its valuation method was sound, we reverse the trial court's valuation of Strider Chainbridge and remand for further proceedings.

### D. Net Value of Marital Estate

Plaintiff argues that the trial court erred by failing to make a specific finding as to the net value of the marital estate. To support his position, plaintiff cites *Carr v. Carr*, 92 N.C. App, 378 (1988), and *Robinson v. Robinson*, 210 N.C. App. 319 (2011). In *Carr*, this Court vacated an equitable distribution order where the trial court failed to make findings "as to the *net* value of the total marital estate, or the properties distributed to each party, or the three tracts of maritally owned real estate." 92 N.C. App. at 379–80. There, we stated that when classifying and valuing property, "the court must be specific and detailed enough to enable a reviewing court to determine what was done and its correctness." *Id.* at 379. Similarly, in *Robinson*, this Court found that the trial court erred where it "made no finding with respect to the total net value of the parties' marital estate" and did not classify or value the parties' two residences. 210 N.C. App. at 323–24.

This case is distinguishable from *Carr* and *Robinson*. In both *Carr* and *Robinson*, the trial court failed to make a finding of the net value of the marital estate

as well as the net value of specific individual assets, making it impossible for this Court to determine the value of the estate or each party's share of the distribution. Without knowing the value of the estate or the individual properties each party received, this Court could not determine whether the distribution was equitable.

In contrast, here, plaintiff concedes that the trial court made findings regarding the individual assets and only failed to calculate and make an ultimate finding as to the net value of the marital estate. While an ultimate finding aggregating the net value of the marital property may be helpful, the trial court's findings as to the net value of each asset is sufficient "to enable a reviewing court to determine what was done and its correctness." Accordingly, the trial court did not err by failing to determine the total net value of the marital estate.

### E.     Distribution

Plaintiff's remaining arguments concern the trial court's distribution of the marital estate. However, our decision that the Aberdeen property is plaintiff's separate property will significantly affect the distribution of the marital estate and the trial court's findings and conclusions that plaintiff challenges. For example, plaintiff challenges the trial court's conclusion that an equal distribution would be inequitable. The trial court based its decision in part on the income, property, and liabilities of the parties, the need of a parent with custody of the children of the marriage to occupy or own the marital residence, the liquid or non-liquid character of the marital and divisible property, and the acts of either party to maintain or waste

marital or divisible property during the period after separation and before the time of distribution. Each of these factors will change once the Aberdeen property is classified as separate and distributed to plaintiff, making review of the trial court's original conclusion ineffective. Accordingly, because we remand to the trial court to redistribute the marital estate, we do not reach plaintiff's remaining arguments challenging the trial court's original distribution of the marital estate.

### III.   Conclusion

For the foregoing reasons, we reverse the trial court's classification and distribution of the Aberdeen property and the trial court's valuation of Strider Chainbridge. We remand this matter for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Judges CARPENTER and GORE concur.