NANCY FAGG STOVALL, Plaintiff v. MANLEY KEITH STOVALL, Defendant

No. COA09-946

(Filed 20 July 2010)

**1. Divorce— equitable distribution—marital property—contradictory stipulations in pretrial order**

The trial court did not err in an equitable distribution case by concluding that it was limited by a pretrial order to determining the value of the divisible property arising from defendant's pay-

ments on the New Madison debts and determining which party would receive the benefits of these payments. This interpretation harmonized the two contradictory stipulations in the pretrial order to provide for an equal distribution of marital property but also provided for the trial court to consider which party should receive credit for the prior payment of marital debts.

**2. Divorce— equitable distribution—marital property—post-separation payments**

The trial court did not err in an equitable distribution case by classifying defendant's postseparation payments as divisible property and concluding the New Madison property must be divided equally with the exception that defendant was entitled to a credit of $160,000 for the payments of marital debt in accordance with the pretrial order. To the extent defendant argued for any consideration of his contributions in addition to payments of the New Madison debts, the stipulation to an equal distribution in the pretrial order barred the trial court from consideration of these factors.

**3. Divorce— equitable distribution—marital property—tax implications**

The trial court did not abuse its discretion or act under a misapprehension of law in an equitable distribution case when it declined to consider the tax implications to defendant husband from the pending sale of the New Madison property. Tax consequences are only considered under N.C.G.S. § 50-20(c)(11) if the trial court determines that an equal division is not equitable, and the trial court was required by the parties' stipulations to divide the property equally except as to Schedule I, which included only debt payments.

**4. Divorce—equitable distribution—marital property—money market account**

The trial court did not err in an equitable distribution case by classifying the pertinent money market account as entirely marital property based on defendant husband's failure to rebut the presumption under N.C.G.S. § 50-20(b)(1) that the funds in the account as of the date of separation were marital.

Appeal by defendant and plaintiff from Order of Equitable Distribution entered 14 January 2009 by Judge Angela B. Puckett in District Court, Stokes County. Heard in the Court of Appeals 27 January 2010.

## STOVALL v. STOVALL

[205 N.C. App. 405 (2010)]

*Bennett & West, by Michael R. Bennett, for plaintiff-appellee.*

*Randolph and Fischer, by J. Clark Fischer, for defendant-appellant.*

STROUD, Judge.

Defendant and plaintiff appeal their equitable distribution order. For the following reasons, we affirm.

### I. Background

On or about 31 October 2005, plaintiff filed a verified complaint requesting equitable distribution.[1] On 30 October 2006, the parties consented to entry of an equitable distribution pretrial order. The equitable distribution hearing was held on 17 November 2008, and on 14 January 2009, the trial court entered an order of equitable distribution. Both parties filed a notice of appeal from the equitable distribution order.

### II. Standard of Review

The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary.

*Pegg v. Jones*, 187 N.C. App. 355, 358, 653 S.E.2d 229, 231 (2007) (citations and quotation marks omitted), *aff'd per curiam*, 362 N.C. 343, 661 S.E.2d 732 (2008). "The trial court's findings need only be supported by substantial evidence to be binding on appeal. We have defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pulliam v. Smith*, 348 N.C. 616, 625, 501 S.E.2d 898, 903 (1998) (citations and quotation marks omitted).

As to the actual distribution ordered by the trial court, "[w]hen reviewing an equitable distribution order, the standard of review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only

---

1. On or about 10 October 2002, the parties were divorced. However, at the time of the divorce there was a pending equitable distribution claim which plaintiff had filed prior to the divorce.

upon a showing that its actions are manifestly unsupported by reason." *Petty v. Petty,* —— N.C. App. ——, ——, 680 S.E.2d 894, 898 (2009) (citations and quotation marks omitted), *disc. review denied and appeal dismissed,* 363 N.C. 806, 691 S.E.2d 16 (2010).

### III. Credit for Debt

The trial court found that New Madison Tobacco Warehouse ("New Madison") is a warehouse which "was purchased during the marriage in approximately 1997 by the Defendant under the name Madison Enterprises, Inc." The trial court classified New Madison as marital property. New Madison was subject to two mortgages, one with the prior owner of New Madison and one with First Citizens Bank ("New Madison debts"). Defendant made payments on the New Madison debts after the date of separation; plaintiff did not. As to these payments, the trial court found, in part, as follows:

> that in a general sense debt payments on the New Madison Tobacco Warehouse have occurred in the amount of approximately $20,000.00 per year for a period of eight (8) years since the date of separation, for a total of approximately $160,000.00 in reduction of a marital debt since the date of separation by the individual defendant from his individual payments.

The trial court further found "that the Defendant should receive a credit for $20,000.00 per year for a period of eight (8) years for his payments on the debts on the New Madison Tobacco Warehouse." The trial court concluded

> [t]hat the divisible property associated with the New Madison Tobacco Warehouse and the marital value of the New Madison Tobacco Warehouse must be divided equally, with the exception that the defendant is entitled to a credit for $160,000 for the payments of marital debt in accordance with the Pre-trial Order.

Both plaintiff and defendant assign error to the trial court's findings and conclusions which gave defendant a "credit" for debt payments of $160,000.00 toward the New Madison debts after the date of separation. Plaintiff argues that the trial court erred by considering these payments as a credit to defendant; defendant argues that the trial court failed to give him enough credit for these payments.

A. Pretrial Order

[1] Our analysis of this issue is complicated by an ambiguity in the parties' stipulations in their pretrial order. We first note that

[c]ourts look with favor on stipulations designed to simplify, shorten, or settle litigation and save cost to the parties, and such practice will be encouraged. While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them. Once a stipulation is made, a party is bound by it and he may not thereafter take an inconsistent position.

*Moore v. Richard West Farms, Inc.*, 113 N.C. App. 137, 141, 437 S.E.2d 529, 531 (1993) (citations, quotation marks, and ellipses omitted). However, in this situation, the parties' stipulations have to a certain extent complicated this case, instead of simplifying it. The parties stipulated in the pretrial order that "an equal division would be equitable." However, the parties also stipulated in the pretrial order that "Schedule I attached hereto is a list of the debts, if any, of the parties hereto that were in existence and were unpaid as of the date of the separation of the parties upon which the parties' agreements and disagreements with regard to specific debts are noted" and that

[t]he Presiding Judge shall rule . . . [w]ith regard to Schedule I, which debts are marital, what were and are the outstanding balances of said marital debts, *which party should receive credit for the prior payment of said marital debts*, and which party should pay the said marital debts that remain unpaid[.]

(Emphasis added.) Schedule I includes the New Madison debts. Thus, the parties had contradictory stipulations in the equitable distribution pretrial order; the parties agreed that an equal distribution would be equitable, but they also stipulated that the trial court should consider "credit for the prior payment of said marital debts[.]"

Essentially, plaintiff argues that under the stipulations the trial court could only treat the payments as divisible under N.C. Gen. Stat. § 50-20(b)(4)(d) and pursuant to the stipulations divide the divisible property equally; defendant argues that not only should the payments all be credited to him, but he should have been credited for more. Thus, we first have to interpret the terms of the pretrial order to determine if the trial court could consider the defendant's payments on the New Madison debts at all, given the stipulation to an equal distribution, and if the payments could be considered, in what manner they could be considered.

We believe that stipulations in pretrial orders should be construed in the same manner as a contract between the parties, and this

Court has previously set out the general principles for construction as follows:

> With all contracts, the goal of construction is to arrive at the intent of the parties when the contract was issued. The intent of the parties may be derived from the language in the contract.
>
> It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties. However, extrinsic evidence may be consulted when the plain language of the contract is ambiguous. Whether or not the language of a contract is ambiguous is a question for the court to determine. In making this determination, words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible. Where the language presents a question of doubtful meaning and the parties to a contract have, practically or otherwise, interpreted the contract, the courts will ordinarily adopt the construction the parties have given the contract *ante litem motam*. The court must not, however, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

*Lynn v. Lynn,* —— N.C. App. ——, ——, 689 S.E.2d 198, 204-05 (2010) (citations, quotation marks, ellipses, and brackets omitted).

Here, the pretrial order is ambiguous, as it provides for an equal distribution, but then also provides for the trial court to consider "which party should receive credit for the prior payment of said marital debts," a factor for unequal distribution. *See* N.C. Gen. Stat. § 50-20(c) (2010). It is apparent from the evidence and arguments presented at trial in this matter that both parties understood the pretrial order as requiring the trial court to consider how the post-separation debt payments by defendant should be treated in the distribution, and it is also clear that defendant was asking to have some recovery of these funds, while plaintiff opposed this; defendant argued before the trial court for greater credit for his payments and efforts to maintain New Madison, and plaintiff argued that the increase in equity of New Madison as a result of defendant's debt payments should be considered as divisible property and must be divided

STOVALL v. STOVALL

[205 N.C. App. 405 (2010)]

equally in accord with the stipulation to an equal distribution. Thus, both parties recognized that under the pretrial order, the trial court was to consider defendant's post-separation payments to some extent; however, plaintiff argued that the pretrial order limited the trial court to determining the value of divisible debt, which would have to be divided equally in accord with the stipulation to an equal distribution while defendant contended that the post-separation payments of debt should be classified as divisible property but he should receive a "dollar-for-dollar credit" for these payments as well as taxes, upkeep, and other expenses related to New Madison. Thus, defendant was essentially asking the trial court for an unequal distribution of the divisible property related to New Madison, based upon distributional factors under N.C. Gen. Stat. § 50-20(c)(11a).

The trial court noted the conflict within the pretrial order and specifically addressed it in the order. Most importantly, neither party has assigned error to the trial court's conclusion as to the meaning of the stipulations:

> [T]he Court cannot, as a matter of law, make any division of marital and divisible properties other than an equal division, *with the exception of the items in Schedule I regarding the stipulation that the Court was to determine any credit to be given for prior payments of marital debts.*

(Emphasis added.) We agree with the trial court in its construction of the stipulations of the pretrial order. The trial court was limited by the pretrial order to determining the value of the divisible property arising from the defendant's payments on the New Madison debts and determining *which party* would receive the benefit of these payments. Because the pretrial order provided that the trial court must determine "which party" would receive credit for the payments, the trial court could distribute the divisible property related to the New Madison debt unequally, if the trial court decided that an unequal distribution of this divisible property would be equitable. *See* N.C. Gen. Stat. § 50-20(c). This interpretation harmonizes the two apparently contradictory stipulations and is in accord with the manner in which the parties presented evidence before the trial court. We must now consider the parties' arguments on appeal within the context of the limitations of the stipulations in the pretrial order.

B.  Plaintiff's Argument Regarding Amount of Credit

[2]  Plaintiff argues that defendant

could not receive credit for those payments [,post-separation payments on the New Madison debt,] as a matter of law because the equitable distribution statutes do not allow the Court discretion to give a credit, only to classify the payments as divisible property, then consider the payments as an unequal distributional factor.

As noted above, the trial court determined the value of the divisible property, but distributed it unequally by giving defendant a "credit" for the entire amount of post-separation payments.

In *Warren v. Warren*, this Court addressed the proper method of valuation of post-separation payments towards debt as divisible property. *See Warren v. Warren*, 175 N.C. App. 509, 516-17, 623 S.E.2d 800, 804-05 (2006). Mr. Warren, the defendant, argued

that the trial court erred by making insufficient findings of fact regarding (1) post-separation payments he made with respect to marital debt . . . . On the date of separation, the parties had an equity line of credit with a balance of $17,738.72. Mr. Warren argues that he paid $4,320.27 in finance charges or interest on this line of credit with post-separation funds. . . .

Mr. Warren argues that his post-separation payments on the line of credit constituted divisible property under N.C. Gen. Stat. § 50-20(b)(4)(d). Although this Court rejected such an argument in *Hay v. Hay*, 148 N.C. App. 649, 655, 559 S.E.2d 268, 273 (2002), in connection with post-separation mortgage payments, that opinion predated a 2002 amendment to N.C. Gen. Stat. § 50-20(b)(4)(d). At the time of *Hay*, the statute defined divisible property as including only increases in marital debt and financing charges and interest related to marital debt. The Court reasoned that the subsection did not apply because defendant's mortgage payments have not increased the marital debt, financing charges, or interest on the marital debt.

The statute, as amended in 2002 . . . now provides that divisible property includes increases and decreases in marital debt and financing charges and interest related to marital debt. As a leading commentator has explained,

With the 2002 amendment to the statute, the subsection authorizes the court to classify postseparation payments of marital debt as divisible property. Whether these payments reduce the principal of the debt, the finance charges related to the debt, or

STOVALL v. STOVALL

[205 N.C. App. 405 (2010)]

interest related to the debt, the court should consider the postseparation payments as divisible property. If the postseparation reduction of the marital debt increases the net value of the marital property, the court may classify the increase as divisible property.

This amendment became effective 11 October 2002.

Since Mr. Warren's payments decreased financing charges and interest related to marital debt, those payments—to the extent made after 11 October 2002—constituted divisible property. A trial court must value all marital and divisible property in order to reasonably determine whether the distribution ordered is equitable. On remand, the trial court must, therefore, make findings of fact regarding the post-separation debt payments made after 11 October 2002.

*Id.* (emphasis added) (citations, quotation marks, ellipses, and brackets omitted).

Here, the trial court properly classified defendant's post-separation payments as divisible property, *see Warren* at 516-17, 623 S.E.2d at 805, and went on to conclude that "New Madision Tobacco Warehouse must be divided equally, with the exception that the defendant is entitled to a credit of $160,000 for the payments of the marital debt in accordance with the Pre-trial Order." Though the trial court labeled the $160,000.00 as a "credit[,]" in actuality, it treated the $160,000.00 as divisible property and concluded that an equal distribution was not equitable, and thus gave defendant $160,000.00 more of New Madison due to his previous payments. See N.C. Gen. Stat. § 50-20(c) ("There shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably."). The trial court specifically set forth findings as to its reasons for ordering an unequal distribution in this regard, and we conclude that the trial court's unequal distribution of divisible property arising from defendant's post-separation payments was not an abuse of discretion in the context of the parties' stipulations in the pretrial order, and thus this argument is overruled.

C. Defendant's Argument Regarding Amount of Credit

Defendant first contends that "the trial court committed reversible error in limiting defendant's credit for debt payments on the

New Madison Tobacco Warehouse to $160,000.00[.]" (Original in all caps.) Essentially, defendant first challenges the trial court's finding that he contributed $20,000.00 per year to payment of the New Madison debts, arguing that he actually contributed more because "the evidence at trial established that a significantly higher credit was required in order for the distribution of the warehouse proceeds to be fair and equitable." Defendant also argues that the trial court's order "is legally insufficient [as to the calculation of defendant's credit] to allow meaningful appellate review and thus is fatally flawed."

At trial, defendant testified that "[a]t the end of the year, I was probably putting twenty, thirty thousand dollars of my money out of the tobacco business in it[.]" Thus, defendant's own testimony supports the trial court's finding of fact, as he stated that he paid approximately $20,000.00 to $30,000.00 a year to maintain New Madison. Although there was also evidence which could have supported a finding of a higher amount of payments toward the New Madison debts, we do not reweigh the evidence on appeal. *See Pegg* at 358, 653 S.E.2d at 231. Therefore, the finding of fact that defendant paid approximately $20,000.00 per year on the New Madison debts is supported by the evidence.

Defendant further argues that the findings of fact are "legally insufficient [as to the calculation of defendant's credit] to allow meaningful appellate review and thus [are] fatally flawed." However, as the finding of fact as to the annual debt payment of $20,000.00 is supported by the evidence, the trial court's finding of the total amount of $160,000.00 is obviously a simple mathematical calculation of multiplying the annual amount of debt payment by eight, based upon the years when defendant had made these payments. We fail to see why these findings could be considered as insufficient to allow meaningful· appellate review, as the calculation is very straightforward. Thus, the trial court did not err in concluding that defendant paid approximately $160,000.00 towards New Madison debts after the date of separation. To the extent that defendant has argued for any consideration of his contributions in addition to payment of the New Madison debts, the stipulation to an equal distribution in the pretrial order barred the trial court from consideration of these factors; only payments on these particular debts were excepted from the stipulation to an equal distribution. This argument is overruled.

## IV. Tax Implications

[3] Defendant next contends that "the trial court abused its discretion and acted under a misapprehension of law when it declined to

consider the tax implications to defendant from the pending sale of the New Madison Tobacco Warehouse[.]" (Original in all caps.) Plaintiff responds that the trial court did not err because "tax implications can only be considered if there is a determination that an equal division is not equitable."

N.C. Gen. Stat. § 50-20(c) provides that

[t]here shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably. The court shall consider all of the following factors under this subsection[.]

N.C. Gen. Stat. § 50-20(c). Factor 11 is "[t]he tax consequences to each party[.]" N.C. Gen. Stat. § 50-20(c)(11). As the trial court was required, pursuant to the parties' stipulations, to divide the marital and divisible property equally except as to Schedule I, which included only debt payments, it could not consider the tax consequences; tax consequences are only considered "[i]f the court determines that an equal division is not equitable[.]" N.C. Gen. Stat. § 50-20(c). Thus, the trial court did not err in not considering the tax implications to defendant.

## V. First Citizen's Money Market Account

[4] Lastly, defendant argues that "[t]he trial court's finding that the First Citizen[']s Money Market Account had a marital value of $20,824.37 lacked evidentiary support and this figure should not have factored into the trial court's final division of assets[.]" (Original in all caps.) Defendant challenges the classification of the First Citizen's Money Market Account as entirely marital property.

Ms. Kim McKinney, Mr. Stovall's daughter and the secretary and treasurer for Madison Enterprises, testified that the First Citizen's Money Market account existed prior to the marriage and that "there was a lot more money [in it] before they got married[.]" Ms. McKinney further testified that between the marriage date and the date of separation, money "went in and out all along because if I didn't have the money, if we didn't a loan [sic] at the time or needed some quick, I'd holler and that's where I had to have the money from."

N.C. Gen. Stat. § 50-20(b)(1) defines marital property as

> all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property or divisible property in accordance with subdivision (2) or (4) of this subsection. Marital property includes all vested and nonvested pension, retirement, and other deferred compensation rights, and vested and non-vested military pensions eligible under the federal Uniformed Services Former Spouses' Protection Act. It is presumed that all property acquired after the date of marriage and before the date of separation is marital property except property which is sepa-rate property under subdivision (2) of this subsection. This presumption may be rebutted by the greater weight of the evidence.

N.C. Gen. Stat. § 50-20(b)(1) (2005). Although the evidence showed that the value of the account was greater as of the date of marriage, and that funds were removed from the account during the marriage, the evidence also showed that defendant deposited funds into the account during the marriage. The source of the funds deposited is unclear; defendant failed to show how much was deposited during the marriage or to trace the funds in and out of the account during the marriage. Even if the funds defendant deposited into the account during the marriage were separate funds,

> [c]ommingling of separate property with marital property, occurring during the marriage and before the date of separation, does not necessarily transmute separate property into marital property. Transmutation would occur, however, if the party claiming the property to be his separate property is unable to trace the initial deposit into its form at the date of separation.

*Fountain v. Fountain*, 148 N.C. App. 329, 333, 559 S.E.2d 25, 29 (2002) (citations omitted). Therefore, defendant failed to rebut the presumption under N.C. Gen. Stat. § 50-20(b)(1) that the funds in the account as of the date of separation were marital. *See* N.C. Gen. Stat. § 50-20(b)(1). The evidence presented at trial showed that defendant used the account during marriage by putting marital funds "in and out" of the account without presenting sufficient evidence to trace any separate contributions, so the trial court properly classified the entire account balance as marital property. *See id.* As plaintiff noted in her brief, "[t]he Trial Court's determination that the First Citizen's Bank money market account was marital property is clearly supported by the evidence."

VI. Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Judges BRYANT and ELMORE concur.