**ROSS v. ROSS**

[230 N.C. App. 28 (2013)]

KENNETH E. ROSS, Plaintiff
v.
LINDA O. ROSS (now Osborne), Defendant

No. COA12-1141

Filed 1 October 2013

**1. Divorce—equitable distribution—valuation of house and lot**

The trial court did not err in an equitable distribution action by using the source of funds theory to value a lot and house as a single asset rather than determining separate appreciation. Plaintiff did not cite in his brief to any part of the record where he offered evidence regarding the separate values of the lot and the house.

**2. Divorce—equitable loan—repayment of loan—marital**

The trial court erred in an equitable distribution action by classifying the repayment of a loan as part marital and part separate where plaintiff's purchase of a lot prior to the marriage was partially financed by a loan which was satisfied during the marriage. When the undisputed evidence showed that the loan was paid off during the marriage, the burden shifted to plaintiff to present evidence establishing the portion of the loan reduction that was his separate property because it was paid before the marriage. This he did not do.

**3. Divorce—equitable distribution—post-separation loan payments**

An equitable distribution final judgment was reversed and remanded with instructions that the amount of defendant's post-separation payments characterized as divisible property be reduced by the amount of a loan received by defendant rather than going to pay off a marital debt.

**4. Divorce—equitable distribution—post-separation loan payments—appreciation of property**

An equitable distribution final judgment was remanded where the trial court erred in its treatment of defendant's post-separation payments on a real property debt, which allowed her to increase her ownership interest in the property itself after the date of separation. In determining the amount of passive appreciation in the marital portion of the property, the trial court should have valued the marital and separate portions of the property as of the date of separation.

**5. Appeal and Error—preservation of issues—no authority cited**

A contention in an equitable distribution appeal for which plaintiff cited no authority was deemed abandoned.

Appeal by Plaintiff from judgment entered 15 March 2012 by Judge Paul Quinn in Carteret County District Court. Heard in the Court of Appeals 10 April 2013.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for Plaintiff.*

*Judith K. Guibert, for Defendant.*

DILLON, Judge.

Kenneth Ross ("Plaintiff") appeals from orders classifying and valuing property in an action for equitable distribution against Linda O. Ross (now, Osborne) ("Defendant") and ordering that the property be sold. We affirm the trial court's orders in part and reverse and remand in part.

Plaintiff commenced this action eleven years ago against Defendant to end their eleven-year marriage. This appeal is the fourth filed by Plaintiff in this action. We stated the factual background of this dispute in detail in our opinion addressing Plaintiff's first appeal ("*Ross I*"), which dealt with the actual merits of the claims at issue between the parties, including those involving equitable distribution. *Ross v. Ross*, 193 N.C. App. 247; 666 S.E.2d 889 (2008) (COA07-981) (unpublished), *disc. reviewed denied*, 363 N.C. 656, 685 S.E.2d 106 (2009). In that appeal, Plaintiff argued, *inter alia*, that the trial court erred in classifying a single-family house and lot in Emerald Isle (the "Property") entirely as marital in nature given that, while Plaintiff had purchased the lot prior to the marriage, the parties had constructed a house upon the lot during the marriage. We held that the Property was dual in nature, part separate and part marital, and remanded the matter "for an appropriate reclassification and valuation of [the Property]." *Id.*

On remand, the trial court entered two orders on 15 March 2012. The first order addressed the classification and valuation of the Property (the "Final Judgment"), and the second order directed that the Property be sold (the "Order"). From these orders, Plaintiff appeals.[1]

---

[1]. Plaintiff's second and third appeals were filed and considered by this Court in the interim. The second appeal ("*Ross II*") addressed the trial court's order setting the bond required to stay its equitable distribution judgment pending the first appeal. *Ross v. Ross,*

## I. Factual Background

The evidence of record tends to show that in 1987, Plaintiff purchased the lot for $86,000.00; in 1990, the parties married; sometime thereafter, they constructed a home on the lot; the parties separated in January 2002; and between the time Plaintiff purchased the lot in 1987 and the date of the Final Judgment in 2011, the parties had either individually or jointly taken out seven loans secured by the Property.

On remand from *Ross I*, the trial court calculated the marital and separate portions of the Property based on the source of funds that had been contributed by the parties towards the Property. The trial court considered Defendant's down payment for the lot; payments made to reduce debt on the Property; and certain post-separation payments made by Defendant for expenses associated with the Property. Specifically, the trial court found the following: (1) Plaintiff contributed $39,200.00 in equity prior to the marriage from his down payment and loan principal payments, which the trial court characterized as Plaintiff's separate property; (2) the parties contributed $115,942.27 during the marriage and prior to separation towards reducing debt on the Property, which the trial court characterized as marital property; (3) Plaintiff contributed $25,020.73 after separation towards reducing marital debt on the Property, which the trial court characterized as Plaintiff's divisible property; and (4) Defendant contributed $40,351.77 in post-separation payments, which the trial court characterized as Defendant's divisible property. The trial court allocated the marital and separate portions of the Property based on the above four categories of payments. Specifically, the trial court found that 53% of the Property was marital by dividing the amount paid during marriage and prior to separation ($115,942.27) by the total payments made across all four categories ($220,514.77). The trial court found that 29% of the Property was Plaintiff's separate property by adding Defendant's pre-marriage contribution ($39,200.00) and post-separation divisible payments ($25,020.73), and then dividing the resulting sum ($64,220.73) by the total payments made across all four categories ($220,514.77). The trial court found 18% of the Property was Defendant's separate property by dividing the amount of post-separation divisible payments she made ($40,351.77) by the total payments made across all four categories ($220,514.77). Based on these calculations, the trial court determined that Plaintiff was entitled to 55.5%

194 N.C. App. 365, 669 S.E.2d 828 (2008), *disc. review denied*, 363 N.C. 656, 685 S.E.2d 106 (2009). The third appeal ("*Ross III*") addressed three orders by the trial court involving discovery issues and the imposition of discovery sanctions. *Ross v. Ross*, __ N.C. App. __, 715 S.E.2d 859 (2011).

of the Property's equity[2], calculated by adding his separate percentage (29%) and one-half of the marital percentage (26.5%); and that Defendant was entitled to 44.5% of the Property's equity, calculated by adding her separate share (18%) and one-half of the marital percentage (26.5%).

The trial court also found that the Property had appreciated significantly from the date of separation to the date of the Final Judgment, and that all of the post-separation appreciation was passive in nature. The trial court essentially allocated the value of the Property as a whole, including the post-separation passive appreciation, based on the parties' respective interests which, as described above, the trial court calculated based on the source of funds contributed by the parties towards the Property.

## II. Analysis

On appeal, Plaintiff contends that the trial court erred by failing to classify and value the Property as mandated by this Court in *Ross I* and by authorizing the sale of the Property based on the terms of the offer to purchase that had been received. For the reasons set forth below, we affirm in part and reverse and remand in part.

### A. Classification and Valuation of the Property

Plaintiff argues that the trial court failed to follow our mandate in *Ross I* which stated that "[t]hat part of the real property consisting of the unimproved property owned by [Plaintiff] prior to marriage should be characterized as separate and that part of the property consisting of the additions and equity acquired during marriage should be considered marital in nature." *Ross I, supra.* Plaintiff makes three arguments challenging the trial court's methodology. We address each argument below.

N.C. Gen. Stat. § 50-20 (2011), requires the trial judge to follow a three-step procedure in deciding equitable distribution matters: (1) all property must be classified as marital or separate, and when property has dual character, the component interests of the marital and separate estates must be identified; (2) the net value of marital property must be determined; and (3) marital property must then be distributed equally or, if equal division would be inequitable, distributed unequally in light

---

2. The trial court determined that a certain loan taken out by Plaintiff after separation (referred to as "Loan #6" in the Final Judgment) was his separate debt and that another certain loan taken out by Defendant after separation (referred to as "Loan #7" in the Final Judgment) was her separate debt. Accordingly, the Property's equity, as determined by the trial court, does not include any reduction for either of these two loans. Neither party, however, has challenged the trial court's characterization of these particular loans.

of the factors set out in N.C. Gen. Stat. § 50-20(c). *See generally, Cable v. Cable*, 76 N.C. App. 134, 137, 331 S.E.2d 765, 767 (1985), *disc. review denied*, 315 N.C. 182, 337 S.E.2d 856 (1985). A "party claiming that property is marital has the burden of proving beyond a preponderance of the evidence" that the property was acquired by either or both spouses, during the marriage, before the date of separation, and is presently owned." *Lilly v. Lilly*, 107 N.C. App. 484, 486, 420 S.E.2d 492, 493 (1992) (citation and quotation marks omitted). "If the party meets this burden, then the burden shifts to the party claiming the property to be separate to show by a preponderance of the evidence that the property meets the definition of separate property." *Id.* (citation and quotation marks omitted).

### 1. Source of Funds Approach

[1] Plaintiff first contends that since the passive appreciation of the Property was largely attributable to the passive appreciation *of the lot* which he purchased prior to the marriage, rather than from any passive appreciation in the value of the house constructed during the marriage, his separate estate is entitled to a greater share of the passive appreciation. In other words, Plaintiff argues that the trial court erred by not determining how much the lot and the improvements had separately appreciated.

In this case, the trial court treated the lot and house as a single asset and made no findings regarding the values or amounts of appreciation in the value of the lot or house separately, which is not incongruent with existing precedent. *See, e.g.*, *Wade v. Wade*, 72 N.C. App. 372, 382, 325 S.E.2d 260, 270, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985) (stating that "the house and land are one asset.") The trial court applied a "source of funds" theory in valuing the marital and separate portions of the Property. *Id.* at 382, 325 S.E.2d at 269. We do not believe the trial court erred in applying the "source of funds" theory as its valuation methodology. S*ee Ross I, supra; Stewart v. Stewart*, 141 N.C. App. 236, 247, 541 S.E.2d 209, 217 (2000) (holding that the trial court's classification of property will not be disturbed "as long as there is competent evidence to support that determination") (citation omitted). We note that Plaintiff did not cite in his brief to any part of the record where he offered evidence regarding the separate values of the lot and house. He merely states that *Defendant's* expert, who testified that the Property had a value of $590,000.00, stated that the lot by itself would be worth $410,000.00 *if* it were vacant and *if* it had a well and septic facility, and further that the house by itself was worth $200,000.00. However, the asset that the trial court classified and directed to be sold was a lot *with* a house on it. Further, Plaintiff does not cite to any evidence concerning

whether there a was well or septic facility on the Property prior to the marriage. Accordingly, this argument is overruled.

### 2. Plaintiff's Pre-marriage Contribution

**[2]** Plaintiff next challenges the trial court's classification of the repayment of a certain $65,000.00 loan as part marital and part separate. We conclude the trial court erred in making this determination.

In its Final Judgment, the trial court determined that Plaintiff purchased the lot *prior* to the marriage for $86,000.00, partially financed by a $65,000.00 loan. The evidence shows that the loan was satisfied *during* the marriage; however, there was no evidence showing how much the loan balance was reduced prior to the marriage and how much the loan balance was reduced during the marriage. Rather, since the deed of trust securing the $65,000.00 loan was cancelled 147.5 months after it was taken out and since 28% of the time that the loan was outstanding was prior to the marriage, the trial court *found* that 28% of the $65,000.00 loan principal (or $18,200.00) was paid down prior to the marriage; and, therefore, this portion of the loan was Plaintiff's separate property. The trial court further *found* that since 72% of the time the loan was outstanding was during the marriage, 72% of the equity achieved by the pay down of the loan was marital.

Plaintiff argues that this allocation by the trial court was error since there was no evidence to support the trial court's determination that an equal amount of principal was paid each month towards the satisfaction of the $65,000.00 loan. Plaintiff further argues that since Defendant failed to present evidence to establish *what portion* of the $65,000.00 loan was paid down prior to the marriage and what portion was paid down during the marriage, she failed to meet her burden of establishing what portion should be classified as marital; and, therefore, the trial court should have characterized the entire $65,000.00 loan as separate, as if it had been paid off prior to the marriage. We agree that there is insufficient evidence in the record to support the trial court's finding that an equal amount of.principal was paid each month towards the $65,000.00 loan. However, we believe that based on the evidence before the trial court, the entire $65,000.00 loan pay off should be treated as marital property rather than Plaintiff's separate property.

In *Ross I*, we stated the following:

> A party claiming that property is marital has the burden of proving beyond a preponderance of the evidence that the property was acquired by either or both spouses, during

**ROSS v. ROSS**

[230 N.C. App. 28 (2013)]

the marriage, before the date of separation, and is presently owned.

If the party meets this burden, then the burden shifts to the party claiming the property to be separate to show by a preponderance of the evidence that the property meets the definition of separate property.

If both parties meet their burdens, the property is considered separate.

*Ross I, supra* (citing *Lilly v. Lilly*, 107 N.C. App. 484, 486, 420 S.E.2d 492, 493 (1992), and *Ciobanu v. Ciobanu*, 104 N.C. App. 461, 466, 409 S.E.2d 749, 752 (1991) (internal quotation marks omitted)). We have also held that financial contributions made during marriage which reduce a mortgage are active increases in equity and shall, therefore, be treated as marital property. *Rice v. Rice*, 159 N.C. App. 487, 497, 582, S.E.2d 317, 324 (2003) (holding that "there is no difference between financial contributions to reduce the mortgage principal and those to improve the property itself" and that "both types of active contributions entitle the marital estate to a proportionate return on its investment").

In this case, the only evidence regarding the reduction of the $65,000.00 loan was documentation surrounding the cancellation of the deed of trust securing the loan. As the trial court found and Plaintiff concedes in his brief, this documentation showed that the loan was paid off and the deed of trust was cancelled in July 1999. We believe this evidence – standing alone – establishes "beyond a preponderance of the evidence" that the payoff of the $65,000.00 loan was made during the marriage. The burden, therefore, then shifted to Plaintiff to present evidence establishing what portion, if any, of the $65,000.00 loan was reduced prior to the marriage and was, therefore, his separate property. *See Lilly*, 107 N.C. App. at 486, 420 S.E.2d at 493. However, Plaintiff did not present any evidence regarding the pre-marital payments towards the note, and he refused to provide this information during discovery. *See Ross III, supra* (affirming the trial court's order sanctioning Plaintiff for providing evasive or incomplete responses to discovery requests and for "flatly refus[ing] to answer" a discovery request that "directly addressed the one remaining issue" for "[a]ny and all documents upon which you have relied, or intend to rely, to support your contention that the land and/or the residential building . . . is your separate property"). Defendant argues in her brief that since "[P]laintiff failed to demonstrate that he retained any separate property interest," the increase in equity in the Property resulting in the payoff of the $65,000.00 loan "must be classified as entirely marital." We agree. Accordingly, the trial court's finding that 28% of the $65,000.00

loan reduction, or $18,200.00, is Defendant's separate property – a finding that is not supported by sufficient evidence – is error. Rather, the entire $65,000.00 loan reduction is marital property. We, therefore, reverse and remand the Final Judgment to be modified accordingly.

### 3. Post-Separation Payments

Plaintiff makes two arguments concerning the trial court's treatment of certain post-separation payments made by Defendant. The trial court characterized these payments, which total $40,351.77, as divisible property but then awarded this entire amount to Defendant as a separate property interest in the Property. The trial court likewise characterized post-separation payments made by Plaintiff to reduce marital debt in the amount of $25,020.73 as divisible property but then awarded this entire amount to Plaintiff as a separate property interest in the Property.

### a. Characterization of Post-Separation Payments

[3] Plaintiff argues that *a small portion* of $40,351.77 post-separation payments made by Defendant should not have been classified as divisible property by the trial court. Defendant's post-separation payments which the trial court found to be divisible property include, in part, payments on a loan procured by Defendant following separation. The trial court found that the proceeds from her loan were used to pay off a marital loan, and therefore Defendant was entitled to treat the reduction of principal in her loan as divisible. Plaintiff, however, contends that a small portion of the proceeds from this loan did *not* go to pay off marital debt but rather was received by Defendant at closing. Defendant concedes in her brief that she did, in fact, receive $2,163.00 as a cash out from her loan which is supported by the evidence. Otherwise, neither party challenges the trial court's decision to divide this divisible property unequally based on the amount that each party contributed towards the establishment of the divisible property. *Stovall v. Stovall*, 205 N.C. App. 405, 413, 698 S.E.2d 680, 686 (2010) (holding that it was not an abuse of discretion to award a spouse all of the divisible property attributable to his post-separation payments which reduced marital debt). Accordingly, we reverse and remand the Final Judgment, directing that it be modified by reducing the amount of Defendant's post-separation payments characterized as divisible property by $2,163.00.

### b. Post-Separation Payments Affecting Property Ownership

[4] Plaintiff argues that the trial court erred in its *treatment* of Defendant's post-separation payments which allowed her to increase her ownership interest in the Property itself after the date of separation.

Plaintiff argues that this treatment allowed Defendant to enjoy a greater share of the post-separation appreciation in the Property than she was entitled to. We agree.

Post-separation appreciation in marital property which is passive in nature is divisible property and is to be distributed by the trial court. N.C. Gen. Stat. § 50-20(b)(4)a. (2011). In determining the amount of passive appreciation in the marital portion of the Property, the trial court should have valued the marital and separate portions of the Property *as of the date of separation.* N.C. Gen. Stat. § 50-20(b)(1), (2), and (4).

Applying the trial court's "source of funds" methodology, there was $155,142.27 contributed towards the Property *as of the date of separation.* Of this amount, Plaintiff contributed 13.5% or $21,000.00, in the form of his down payment for the lot, prior to the marriage, which is, therefore, his separate property. The remaining 86.5% is marital. Accordingly, Plaintiff is entitled to a 56.75% share (which is the sum of 13.5% and one-half of 86.5%) in the Property's equity as of the date of distribution. Defendant is entitled to a 43.25% share in the Property's equity as of the date of separation. We, therefore, reverse and remand the Final Judgment, directing that it be modified by changing the allocation Plaintiff's share in the Property as of the date of separation from 55.5% to 56.75% and Defendant's share in the Property from 44.5% to 43.25%.[3]

---

3. This error by the trial court did not result in a significant change in ownership percentages in this case since both parties made post-separation payments. However, the error could be significant where only one party makes post-separation payments. Consider an example where a house was the only marital asset in a marriage and had a value of $100,000.00 with $90,000.00 of indebtedness at the date of separation. Assume that between the date of separation and the date of distribution, the husband reduced the debt by another $30,000.00 to $60,000.00, *and* the house doubled in value to $200,000.00. As a result, the house hypothetically has $140,000.00 in equity as of the date of distribution. The debt reduction which occurred during marriage would be marital property. The husband's post-separation debt reduction would be divisible property. The post-separation, passive appreciation would also be divisible property. Assume that the trial court determined that the husband was entitled to all of the divisible property represented by his post-separation debt reduction and that the parties were otherwise entitled to an equal distribution of the divisible property represented by the post-separation appreciation of the house, as well as an equal distribution of the marital estate. If the house were in fact sold for $200,000.00, resulting in $140,000.00 to be distributed after the loan was satisfied, the husband would hypothetically receive $30,000.00 for his post-separation debt reduction and the husband and wife would evenly split the remaining $110,000.00. As a result, the husband would receive $85,000.00 and the wife, $55,000.00. If, however, the trial court's erroneous methodology were employed, such that post-separation payments affected the ownership percentages, the husband would be deemed to own 75% of the house as his separate property and the remaining 25% would be marital property, since the debt was reduced by $10,000.00 during marriage and by $30,000.00 after separation by the husband. As a result, applying the trial court's erroneous rationale, the husband would receive $122,500.00 (or 87.5% of the equity); and the wife would only receive $17,500.00 (or 12.5% of the equity).

**ROSS v. ROSS**

[230 N.C. App. 28 (2013)]

## B. Order Directing the Sale of the Property

[5] Plaintiff argues in his brief that the trial court erred in ordering the sale of the Property "upon completion of the appellate process. . . ." However, Plaintiff cites no authority for his argument, merely contending that "[a]ny sale of the property should be halted until there has been a proper equitable distribution of the parties' separate, marital and divisible property with respect to the [Property]." Accordingly, we deem that Plaintiff has abandoned this argument, and we leave the trial court's Order undisturbed. *See* N.C.R. App. P. 28(b)(6).

## II. Conclusion

For the foregoing reasons, we affirm in part and reverse and remand in part, directing the trial court to modify the Final Judgment (1) to classify the $65,000.00 loan taken out by Plaintiff prior to marriage as entirely marital; (2) to characterize 86.5% of the Property as of the date of separation as marital property and 13.5% of the Property as of the date of separation as Plaintiff's separate property; (3) to characterize the passive appreciation of the Property subsequent to the date of separation as divisible property and distribute said property between Plaintiff and Defendant; (4) to characterize the $25,020.73 post-separation payments made by Plaintiff to reduce debt on the Property *and* $38,188.77 of the $40,351.77 of post-separation payments made by Defendant to reduce debt and pay certain expenses associated with the Property as divisible property and distribute said property between Plaintiff and Defendant[4]; and (5) after making the above adjustments, to enter a new distribution award.

AFFIRMED, in part; REVERSED and REMANDED, in part.

Judge CALABRIA and Judge ERVIN concur.

---

4. We note that N.C. Gen. Stat. § 50-20(4)(d) (2011), was amended to include within the definition of divisible property post-separation reductions in marital debt which were made after 11 October 2002. *See Warren v. Warren*, 175 N.C. App. 509, 517, 623 S.E.2d 800, 805 (2006); 2002 N.C. Sess. Laws ch. 159, sec. 33.5. Here, the parties separated a January 2002. Therefore, any post-separation, debt-reduction payments made prior to 11 October 2002 should technically not be characterized as divisible property. However, Plaintiff does not argue that the trial court erred by mischaracterizing, in this particular way, the post-separation payments made by the parties as divisible property. Nonetheless, we hold that any error regarding the trial court's characterization of any such payments as divisible property to be harmless. *See Cooke v. Cooke*, 185 N.C. App. 101, 107-08, 647 S.E.2d 662, 667 (2007), *disc. review denied*, 362 N.C. 175, 657 S.E.2d 888 (2008) (holding that it was error, but not error necessitating remand, for a trial court to mischaracterize post-separation payments made prior to 11 October 2002 towards marital debt as divisible property and to distribute all such payments to the party who made them).