An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-594

Filed 20 May 2026

Johnston County, No. 21CVD003300-500

DANA CURTIS KIMBALL, Plaintiff,

v.

MATTHEW JUSTIN KIMBALL, Defendant.

Appeal by Defendant from judgment entered 2 January 2025 by Judge Jimmy L. Love Jr. in Johnston County District Court. Heard in the Court of Appeals 11 February 2026.

> *No brief for plaintiff-appellee, pro se.*
>
> *Robert L. Schupp for defendant-appellant.*

WOOD, Judge.

Defendant Matthew Justin Kimball ("Defendant") appeals the trial court's 2 January 2025 order awarding unequal distribution of the marital estate to Dana Curtis Kimball ("Plaintiff").

## I. Factual and Procedural Background

Plaintiff and Defendant married on 20 December 2018 and separated on 21 May 2021. There were three children born of the marriage. On 20 September 2021, Plaintiff filed a complaint for temporary and permanent custody and a motion for emergency custody. On 21 October 2021, in response to Plaintiff's complaint, Defendant filed an answer and counterclaim for equitable distribution. Defendant claimed he was entitled to an equitable distribution of marital property and debt and that it would be equitable for him to receive a distribution greater than one-half of the marital assets. On 4 May 2022, Plaintiff filed a motion to consolidate the claims and counter claims for equitable distribution and child custody and support.

On 1 August 2022, Defendant filed a financial affidavit listing his monthly income and expenses, identifying only the parties' personal vehicles as separate assets. On 18 July 2022 and 2 August 2022, the trial court entered orders continuing the matter. On 18 August 2022, Plaintiff filed a motion to amend her complaint, which was later granted on 28 November 2022. On 23 August 2022, the trial court entered an order requiring the parties to cooperate to file an amended joint tax return for the tax year 2021. On 1 December 2022, Plaintiff filed her amended complaint to include claims for post-separation support, alimony, attorney fees, and equitable distribution. On 7 December 2022, the trial court entered another order to continue the matter. On 21 December 2022, Defendant filed an equitable distribution inventory affidavit. On 23 January 2023, Defendant filed an amended answer and counter claim regarding both child custody and support and equitable distribution.

On 28 April 2023, Defendant filed a "motion in the cause for contempt" alleging Plaintiff had willfully violated the order regarding filing an amended joint tax return for 2021. The same day, Defendant filed a "motion regarding 2022 tax return filing," requesting that Defendant be able to claim the minor children as dependents. Another continuance order was entered on 24 May 2023.

On 19 July 2023, the trial court entered an order for interim distribution of the marital residence. The order states in relevant part that the parties were to jointly retain an appraiser to determine the current value of the marital residence, and once Defendant received the appraisal report he was to notify Plaintiff "in writing if he wants the Marital Residence distributed to him for the Appraisal Value." Further,

> 3. If the Defendant timely elects to have the Marital Residence distributed to him for the Appraisal Value, the Marital Residence shall be awarded to Defendant for all future equitable distribution proceedings at the Appraised Value and the mortgage and equity line shall also be awarded to Defendant. If it is later determined that Defendant owes a distributive award to Plaintiff and Defendant cannot pay the distributive award in a lump sum, Defendant shall refinance the Marital Residence within sixty (60) days of the entry of the order requiring a distributive award to pay the distributive award. If he cannot refinance the Marital Residence, it shall be sold as set forth in paragraph 5 below.

> 4. The parties dispute various issues regarding the marital residence including, but not limited to, whether Plaintiff is entitled to the return of a $60,000 gift from her parents, whether money used by Defendant from the equity line should be charged solely to him, how to classify Defendant's previous payments on the mortgage and equity line, and whether (or to what degree) Plaintiff

should be charged with expenses relating to the marital residence for events occurring after the date of separation (including the air conditioner).

On 15 August 2023, Plaintiff filed an equitable distribution inventory affidavit, including, in part, that the $60,000.00 from her parents is her separate property and described it as a "gift from parents early inheritance used toward purchase of home (#1)." Additionally, Plaintiff listed Defendant's principal 401(k) with a value of $104,000.00 as marital property and proposed it should be split. On the same day, Plaintiff filed a financial affidavit for use in child support, post-separation support, and alimony.

On 14 November 2023, the trial court entered an initial equitable distribution pretrial order. The pretrial order states in relevant part that the parties "Agree on Value; Disagree on Distribution," on Defendant's principal 401(k) as marital property, and "Disagree Whether Property is Marital" on the $60,000.00 from Plaintiff's parents. No final pretrial equitable distribution order was entered. The matter came on for hearing on 11 July 2024; the trial court entered its judgment for equitable distribution on 2 January 2025. Defendant appeared *pro se* at the hearing but is now represented by counsel on appeal. On 16 January 2025, Defendant filed notice of appeal.[1]

## II. Analysis

---

[1] Plaintiff-Appellee did not submit a brief on appeal.

Defendant presents five arguments on appeal: (1) the trial court erred by concluding Plaintiff rebutted the presumption that the $53,868.04 was marital property and by further classifying it as separate property and ordering Defendant to pay that amount to Plaintiff; (2) that because of the error regarding those funds, the total value of the marital estate is incorrect; (3) the amount Defendant has been ordered to pay Plaintiff is incorrect because of the incorrectly classified funds; (4) the trial court erred by ordering the marital residence be sold if Defendant was unable to pay the distributional amount award to Plaintiff within sixty days of the entry of the order; and (5) the trial court committed error by precluding Defendant from introducing evidence regarding his 401(k) as separate property because the initial pretrial order had not been converted to a final pretrial order.

## A. Standard of Review

An order for equitable distribution is reviewed by this Court for a "clear abuse of discretion." *Petty v. Petty*, 199 N.C. App. 192, 197, 680 S.E.2d 894, 898 (2009). A trial court's decision regarding the division of property in an equitable distribution matter will be "upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

> "Equitable distribution is governed by [N.C. Gen. Stat.] § 50-20, which requires the trial court to conduct a three-step process: (1) classify property as being marital, divisible, or separate property; (2) calculate the net value of the marital and divisible property; and (3) distribute equitably the

marital and divisible property."

"A trial court's determination that specific property is to be characterized as marital, divisible, or separate property will not be disturbed on appeal if there is competent evidence to support the determination."

Competent evidence is "evidence that a reasonable mind might accept as adequate to support the finding."

*Smith v. Smith*, 387 N.C. 255, 258, 912 S.E.2d 762, 764-75 (2025) (cleaned up) (quoting *Brackney v. Brackney*, 199 N.C. App. 375, 381, 682 S.E.2d 401, 405 (2009); *In re J.M.*, 384 N.C. 584, 591, 887 S.E.2d 823, 828 (2023)).

The trial court's classification of property in an equitable distribution proceeding is a conclusion of law reviewed *de novo*. *Roberts v. Kyle*, 291 N.C. App. 69, 75, 893 S.E.2d 482, 486 (2023). "Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Reese v. Mecklenburg Cnty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009). "Classification of property must be supported by the evidence and by appropriate findings of fact." *McIver v. McIver*, 92 N.C. App. 116, 127, 374 S.E.2d 144, 151 (1988).

## B. Classification of Gift Funds

Defendant argues the trial court erred by concluding Plaintiff successfully rebutted the presumption that she had made a $53,868.04 gift to the marriage because there was no more than a scintilla of evidence presented to support that the funds, gifted by Plaintiff's parents to her, were intended to remain her separate

property once conveyed for the purchase of the marital residence. Defendant argues he was prejudiced by this error because he was required to pay the sum of these funds to Plaintiff.

Only marital property is subject to equitable distribution. *Kerslake v. Kerslake*, 295 N.C. App. 504, 510, 907 S.E.2d 40, 45 (2024). "Marital property refers to 'real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of separation of the parties.' Property acquired by either spouse before marriage is separate property." *Id.* (quoting N.C. Gen. Stat. § 50-20(1b).

> The trial court must classify and identify property as marital or separate depending upon the proof presented to the trial court of the nature of the assets. The burden of showing the property to be marital is on the party seeking to classify the asset as marital and the burden of showing the property to be separate is on the party seeking to classify the assets as separate. A party may satisfy [his or] her burden by a preponderance of the evidence.

*Atkins v. Atkins*, 102 N.C. App. 199, 206, 401 S.E.2d 784, 787 (1991) (cleaned up). If the party seeking to prove the property is marital meets his or her burden of showing the property is marital, "then the burden shifts to the party claiming the property to be separate to show by a preponderance of the evidence that the property meets the definition of separate property." *Ross v. Ross*, 230 N.C. App. 28, 32, 749 S.E.2d 84, 88 (2013). "If both parties meet their burdens, the property is considered separate property." *Finney v. Finney*, 225 N.C. App. 13, 18, 736 S.E.2d 639, 643 (2013).

"However, when property is acquired during marriage by one spouse from his or her parent(s), a rebuttable presumption arises that the transfer is a gift to that spouse"; "the spouse resisting the separate property classification" must rebut the presumption "by showing a lack of donative intent." *Caudill v. Caudill*, 131 N.C. App. 854, 857, 509 S.E.2d 246, 249 (1998). Additionally, a presumption that a gift of separate property has been made to the marital estate arises when the "spouse furnishing consideration from separate property causes [the] property to be conveyed to the other spouse in the form of tenancy by the entireties." *Romulus v. Romulus*, 215 N.C. App. 495, 503-504, 715 S.E.2d 308, 314-15 (2011). Whether this presumption is then rebutted by clear, cogent, and convincing evidence is left to the discretion of the trial court. *Id.*; *McLean v. McLean*, 323 N.C. 543, 555, 374 S.E.2d 376, 383 (1988).

The contested conclusion of law states in full:

> 8. Item 144 ($53,868.04 (originally listed as $60,000)) is the amount that Plaintiff paid down on the Marital Residence from the gift made to her by her parents. Although the marital residence constitutes marital property, as to this amount ($53,868.04), *Plaintiff has rebutted, by the greater weight of the evidence, the presumption that she made a gift to the marriage of this amount.* Item 144 is awarded to Plaintiff as her separate property. Because Item 144 is separate property and *the Marital Residence was previously awarded to Defendant*, the $53,868.04 needs to be deducted from the marital estate before calculating the marital estate and the distributive award, and Defendant needs to pay that amount to Plaintiff in addition to the distributive award set forth herein in order to return those funds to Plaintiff.

A finding of fact with nearly identical language is contained in the order to support this conclusion.

Defendant asserts the only evidence presented to support the finding and conclusion that Plaintiff intended for the $53,868.04 to remain her separate property once she contributed it to the purchase of the marital residence was her own testimony, and her testimony, standing alone, was insufficient to rebut the presumption it had been a gift to the marital estate. Plaintiff testified that her parents agreed to "advance me part of my inheritance so I could purchase[] a home with the intention that that would be my separate property" and "[i]t was understood that the money from my parents was intended to be mine, and the money put down from the sale of [prior home] was partial marital as well." Plaintiff further testified she relayed this information to Defendant.

In addition to her testimony, Plaintiff submitted multiple exhibits to support her contention that the gift funds are her separate property. Plaintiff offered a letter signed by herself and Defendant written to Plaintiff's parents dated 21 June 2019 and signed 24 June 2019 which states:

> Dear Bill and Georgia,
>
> We, [Defendant] and [Plaintiff], recognize the $65,000 gift that you have decided to *give your daughter*, [Plaintiff], of which $60,000 will eventually be placed in a joint account owned by both of us for the purpose of securing a mortgage . . . . Thank you very much for your generosity shown towards our family. We recognize that it comes as no small decision and we deeply appreciate ALL of the help the both

> of you have contributed to our family. That being said, In the event that we fail to purchase [] Garner, NC 27529 together, we agree that we will return the $65,000 in an expedient manner.

Additionally, Plaintiff submitted into evidence: a wire transfer for $65,000.00 from her mother into Plaintiff's personal bank account; a settlement statement showing a $93,904.57 balance due from Plaintiff and Defendant to close on their home; and a wire transfer form showing a wire amount of $53,868.04 from Plaintiff to the closing attorney. In an attempt to rebut the evidence submitted by Plaintiff, Defendant called Plaintiff's mother, Georgia Springer as a witness to testify about the funds in question. However, Mrs. Springer testified she gave Plaintiff "$65,000.00 with the *intent it would be her money* that she could use to buy a safe home for the children."

Although Plaintiff used the funds gifted by her parents to help purchase the marital home, it is clear that at the time of the conveyance Plaintiff's parents were aware the funds would be used towards a marital home and intended for the funds to be gifted to Plaintiff as her separate property. The letter indicates both parties understood these funds to be Plaintiff's separate property. Thus, we conclude the trial court did not err by determining the gift funds are Plaintiff's separate property; the trial court acted within its discretion by determining Plaintiff rebutted the presumption she had gifted these funds to the marriage. Because we conclude the trial court did not err in its classification of these funds, we need not address Defendant's arguments that the total value of the marital estate is incorrect and that

the amount Defendant has been ordered to pay Plaintiff is incorrect because of the allegedly incorrectly classified gift funds.

## C. Requirement to Sell Marital Residence

Defendant next argues the trial court committed error by ordering that the former marital residence be sold if Defendant was unable to pay Plaintiff the distributional award within sixty days of the entry of order. Defendant argues there are no findings of fact or conclusions of law to support this requirement to sell the home or around Defendant's ability to pay the distributed award and the trial court "may not simply order a sale of the property to satisfy a distributive award."

The trial court's order requires Defendant to list the marital home for sale within sixty days of the entry of judgment *if he is unable* to make the distributional award. The trial court includes the identical language in a finding of fact as follows:

> 31. Pursuant to the Interim Distribution Order, Defendant shall pay said amount within sixty days of the entry of this Equitable Distribution Judgment; *if he fails to pay said amount within sixty days of the entry of this Judgment*, he shall list the Marital Residence for sale and distribute the proceeds in accordance with the Interim Distribution Order. Defendant shall be responsible for repairs from damage caused after the entry of the Interim Distribution Order. Plaintiff shall be entitled to the net proceeds of the sale of the Marital Residence, up to $210,511.37. If the net proceeds are less than $210,511.37, Defendant shall pay any remaining balance within 60 days of the sale of the Marital Residence.

The order for interim distribution of the marital residence contains similar language:

> 3. . . . If it is later determined that Defendant owes a

distributive award to Plaintiff *and Defendant cannot pay the distributive award in a lump sum*, Defendant shall refinance the Marital Residence within sixty (60) days of the entry of the order requiring a distributive award to pay the distributive award. If he cannot refinance the Marital Residence, it shall be sold as set forth in paragraph 5 below.

Defendant contends the trial court's order conflicts with this Court's holding in *Miller v. Miller*. We disagree. Defendant must only list the marital residence for sale *if he fails to pay* Plaintiff the distributive award within sixty days. Thus, as the requirement to list and sell the marital home comes into play *only if* Defendant fails to pay the distributive award within sixty days as ordered, he as "the party [to] receive[] distribution of the real property is free to keep it or sell it." *Miller v. Miller*, 253 N.C. App. 85, 105, 799 S.E.2d 890, 903 (2017).

**D. 401(k) Evidence**

Lastly, Defendant argues the trial court erred by excluding his evidence concerning his 401(k) account. Specifically, Defendant argues the exclusion of this evidence amounts to a denial of a substantial right and he should have been permitted to submit it pursuant to N.C. Gen. Stat. § 1A-1, Rule 61. While Defendant asserts there does not seem to be an apparent basis in the record for the trial court's exclusion of the evidence, our review of the record reveals the trial court appears to treat the pretrial order as a binding stipulation between parties.

Defendant correctly points out that the pretrial order considered at the hearing was an initial pretrial order and there was no final pretrial order entered. The initial

pretrial order was filed on 14 November 2023 and the hearing for equitable distribution took place the following year on 11 July 2024. At the outset of the hearing, the trial court acknowledged that there was only an initial pretrial order:

> TRIAL COURT: Do you have the final approved - - I'm looking at the initial [pretrial order]? Do we have a final pretrial order?
>
> DEFENDANT: We do not, Your Honor.
>
> PLAINTIFF'S COUNSEL: I have a printed copy of the initial one to use for today.[2]
>
> TRIAL COURT: All right. Now, I see several spots on some of these schedules there's TBD. That's - - I need a number on it. This TBD don't work with me. So, I understand that some places it says DNL, I guess do not list, but if there's a TBD, there needs to be a number placed by that.
>
> PLAINTIFF'S COUNSEL: I can clean up mine.
>
> TRIAL COURT: Okay.
>
> PLAINTIFF'S COUNSEL: Verbally or how do you want me to do it?
>
> TRIAL COURT: Just go ahead and do it manually. Do it - - this is going to be my copy, I can do it on mine.
>
> DEFENDANT: Your Honor, can I [have] a recess, a short recess so I can print off some copies that might support the TBD items?
>
> TRIAL COURT: Well you don't have any TBD items. You talking about - - what are you talking about?

---

[2] At the hearing, Plaintiff was represented by counsel while Defendant appeared *pro se*; however, the record tends to show that both parties were represented by counsel at the time of the initial pretrial order.

DEFENDANT: In particular the principle 401K.

PLAINTIFF'S COUNSEL: It's on Schedule [C].

DEFENDANT: Item 125.

TRIAL COURT: Where are you going to print it off at?

DEFENDANT: Well, I'd like to use the lawyer's lounge if I can have someone grant me access to that room. Otherwise - -

The trial court appears to grant Defendant time to go print off the evidence he requested to enter; but when the time came to discuss the 401(k) and Defendant attempted to argue it should not be classified as marital property, the trial court denied Defendant the ability to present evidence.

TRIAL COURT: Well, it's a bit late to do that because it's on Schedule C, marital property agree on value, disagree on distribution. And you got an agree on value, and you say it's yours and she says it's split. You know, she agreed that you got it. So you get it all.

DEFENDANT: If I may, Your Honor. Most of that retirement money was earned prior to the date of marriage.

TRIAL COURT: Well, again, [Defendant], and I know you're not an attorney, but on the pretrial order it has it as marital property, and you're getting it. And so I'm not – I'm not going to allow any evidence concerning whether it's marital or separate because you -- you on there agreed it's martial property with everybody's signature on this pretrial order.

Although no final pretrial order was entered, an initial pretrial order was entered by the parties, and the trial court did not err by treating the contents of the initial pretrial order as binding stipulations. "A stipulation is an agreement between

parties establishing a particular fact in controversy," and "[w]hile a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them." *Smith*, 387 N.C. at 259, 912 S.E.2d at 765 (cleaned up). The record reveals that the initial pretrial order was signed by counsel for both parties agreeing to its terms; further, our review of the record reveals that while there were a few items marked as "TBD" in the initial pretrial order, the trial court did not allow any true amendment to any items' value, classification, or distribution on which the parties stipulated.[3] When a pretrial order such as the one here is entered into by parties, it "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." N.C. Gen. Stat. § 1A-1, Rule 16. The 401(k) funds were included on Schedule C in the initial pretrial order, which states the parties agreed that the item was martial property, agreed on the value of the item, but disagreed on the distribution. Because Defendant was attempting to introduce evidence to challenge the classification of the item from marital to separate and it was stipulated to as marital, the trial court did not abuse its discretion by not allowing Defendant to introduce the evidence because "[w]hile a stipulation remains in place, the parties are

---

[3] In its equitable distribution judgment, the trial court's finding of fact ten references that the parties "amended their stipulation" of certain items. However, our review of the hearing transcript reveals that the referenced "amendments" are actually the resolutions to disagreements the parties had on certain items indicated within the initial pretrial order.

'bound by it and may not thereafter take an inconsistent position.'"[4] *Smith*, 387 N.C. at 259, 912 S.E.2d at 765 (cleaned up). Thus, we affirm the trial court's classification and distribution of Defendant's 401(k).

## III. Conclusion

For the reasons stated herein, we affirm the trial court's classification of the gift funds from Plaintiff's parents as Plaintiff's separate property and conclude the trial court did not err by ordering that Defendant list the marital residence to sell if he is unable to pay the distributive award to Plaintiff within sixty days. Further, we conclude the trial court did not abuse its discretion by treating the initial pretrial order as binding and by not allowing Defendant to present evidence regarding his 401(k). Therefore, we affirm the judgment of the trial court.

AFFIRMED.

Judges COLLINS and STADING concur.

Report per Rule 30(e).

---

[4] While stipulations may be set aside by the trial court under certain circumstances, we note that Defendant did not advance an argument at the trial court that the stipulation should be set aside. "A party to a stipulation who desires to have it set aside should seek to do so by some direct proceeding, and, ordinarily, such relief may or should be sought by a motion to set aside the stipulation in the court in which the action is pending, on notice to the opposite party." *Plomaritis v. Plomaritis*, 222 N.C. App. 94, 106, 730 S.E.2d 784, 792 (2012) (cleaned up).